Sheri L. COLLOM, Plaintiff and Appellant,

v.

R.W. PIERSON, M.D., Defendant,

and

Dennis J. Lutz, M.D., Defendant and Appellee.

Civ. No. 11428.

Supreme Court of North Dakota.

Aug. 20, 1987.

---

Frederick E. Saefke, Jr., Bismarck, for plaintiff and appellant.

Zuger & Bucklin, Bismarck, for defendant.

Zuger, Kapsner & Blazer, Bismarck, for defendant and appellee; argued by William P. Zuger.

MESCHKE, Justice.

Sheri Collom sued Dr. R.W. Pierson and Dr. Dennis J. Lutz for medical malpractice. Answering special verdict questions, the jury decided that the doctors were not negligent. Collom appeals as to Dr. Lutz only, claiming that his medical expert was not qualified to testify. We affirm.

On November 7, 1972, Collom came to the emergency room of Trinity Medical Center in Minot, complaining of pain in her pelvic area. Dr. Pierson examined her and discovered a pelvic mass. Dr. Pierson consulted Dr. Lutz, a specialist in obstetrics and gynecology, who recommended exploratory surgery.

During surgery, on November 9, 1982, Dr. Lutz removed Collom's right fallopian tube which had a cyst and an infected mass. He also did an incidental appendectomy.

During the next ten days, Collom had intermittent fevers and bouts of severe abdominal pain and distension, constipation, diarrhea and vomiting. On the fifth day, pus began to drain from Collom's surgical wound. Collom was released from the hospital on November 20. Her condition worsened and on November 25 she returned, complaining of pain and shortness of breath.

Collom was promptly moved to a hospital at Minneapolis, where a test indicated an opening in her lower colon. On November 26, 1982, Dr. Leonard Schultz operated and found a perfectly round hole, one centimeter in diameter, in Collom's colon, together with extensive infection in her abdomen. Dr. Schultz performed a diverting colostomy to drain her colon and thus to promote healing. From December 1982 to May 1985, Collom was hospitalized fifteen times for examinations, tests, and three more surgeries to clear up her ailments.

She sued Dr. Lutz, Dr. Pierson and Trinity for malpractice. Trinity was dropped from the suit before trial. At trial, Collom sought to prove that Dr. Lutz carelessly caused the opening during surgery or that he did not properly diagnose and treat the condition which caused the opening. Dr. Lutz defended on the theory that the opening occurred after surgery and that his post-surgical treatment was proper.

The sole medical expert for Dr. Lutz was Dr. M. Michael Eisenberg, a general surgeon from New York with expertise in

gastroenterology, a specialty in disorders of the digestive system. Testifying by video-deposition, Dr. Eisenberg opined that the opening in Collom's colon could not have been more than three days old on November 26, so that it could not have occurred during Dr. Lutz's surgery, seventeen days earlier. Dr. Eisenberg testified that, while the cause of the opening could not be ascertained, Collom had a preexisting bowel disease which contributed to her condition and that the opening could have been made by tubes inserted in her rectum for enemas after Dr. Lutz's surgery. Dr. Eisenberg also testified about proper treatment of an infection like Collom's.

During taking of the deposition, counsel for Collom objected to the concluding question by counsel for Dr. Lutz:

"Q [By MR. ZUGER] The bottom line is, do you find any evidence of malpractice or negligence, if you will, whatsoever, on the part of either Dr. Lutz or Dr. Pierson in this case?

"A No.

". . . .

"MR. SAEFKE: We're going to object on the basis of no foundation.

"MR. ZUGER: In what specific regard? He's been through the entire chart. He's read all the depositions. Where's the foundation lacking?

"MR. SAEFKE: The question referred to Dr. Lutz and Dr. Pierson. You asked him whether there was any negligence on their part. My objection is there's no foundation for him to answer that question.

"MR. ZUGER: And can you be more specific so I can have an opportunity to cure your objection?

"MR. SAEFKE: No, I'm not going to try your lawsuit, counsel. You've been in this for some time. You know the qualifications of those gentlemen and their practices and you know the qualification of your witness and his practice. And my objection is that he is not qualified to testify as to whether there was any negligence on the part of the defendants in this lawsuit.

"MR. ZUGER: And so that I have an opportunity to cure this before I conclude this deposition, where is he lacking in foundational qualifications?

"MR. SAEFKE: That's not my obligation, counsel.

"MR. SCHREINER [representing Dr. Pierson]: May I suggest, what I'm inferring from Mr. Saefke's implication, is that he may be discussing the locality rule.

"MR. ZUGER: If he's not going to be specific, I can't cure it, so I guess, Dr. Eisenberg, go ahead. You can answer the question.... Do you find any evidence in the materials you reviewed, going through this entire chart, do you find any evidence whatsoever that either Dr. Lutz or Dr. Pierson were in any way negligent, failed to meet the appropriate standards of care that apply to physicians treating a case such as this?

"MR. SAEFKE: I'm going to object on the basis it's—there's no foundation to qualify this doctor to testify in that regard. Secondly, that it would call for a conclusion on his part, which is a matter of fact to be determined by the jury.

"Q Go ahead.

"A I don't find any evidence of negligence or malpractice."

At trial, Collom sought to exclude all of Dr. Eisenberg's testimony. Her position was that "there is no showing in his deposition testimony of his familiarity with the practice of obstetrics and gynecology nor the similar localities nor similar circumstances to qualify him to testify on the practice of Dr. Lutz in North Dakota."

The trial court allowed the evidentiary use of Dr. Eisenberg's deposition:

"Dr. Eisenberg may testify. There is a great deal of discretion left to the trial judge as to whether an expert is qualified or whether to admit expert testimony. Under the rules, if there is a limit to the trial judge's discretion, it may be mainly a limit on the discretion to exclude."

The jury determined that the doctors were not negligent. Appellant Collom seeks a new trial against Dr. Lutz, claim-

ing that the evidentiary use of Dr. Eisenberg's testimony was error because he was not qualified to testify as an expert in this case. Dr. Lutz suggests that since Collom "failed to preserve a proper foundational objection in the deposition ... for lack of specificity," her appellate challenge should not be considered.

NDRCivP Rule 32 regulates use of depositions. Generally, "any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used" when authorized under Rule 32(a). Rule 32(b) specifically deals with "Objections to Admissibility":

"Subject to the provisions of Rule 28(b) and subdivision (d)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying."

Subdivision (d)(3) of Rule 32, dealing with the "Effect of Errors and Irregularities in Depositions," particularly "as to Taking of Depositions," states:

"(A) An objection to the competency of a witness or to the competency, relevancy, or materiality of testimony is not waived by failure to make them [sic] before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

"(B) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties, and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition."

 Objections to foundation can frequently be obviated by further testimony. Therefore, an objection to foundation at a deposition is futile unless it is sufficiently specific to afford the opposing party opportunity to cure it. *See United States v.*

*Michaels,* 726 F.2d 1307, 1314 (8th Cir. 1984): "Foundation objections require specificity." Collom's counsel failed to specify what was lacking. Therefore, we cannot consider Collom's deposition objection to foundation for any of Dr. Eisenberg's testimony.

At trial, Collom made a broad attack on Dr. Eisenberg's qualifications. Counsel for Dr. Lutz fully developed Dr. Eisenberg's education and experience in the deposition, and does not suggest that anything more could have been added. Therefore, we approach this appeal as arising from an "objection ... to the competency ... of testimony ... not waived by failure to make [it] ... during the taking of the deposition." NDRCivP Rule 32(d)(3)(A).

 Most of Dr. Eisenberg's testimony dealt with time of occurrence and causes of the opening in Collom's colon. As an experienced surgeon specializing in gastroenterology, Dr. Eisenberg was clearly "qualified as an expert by knowledge, skill, experience, training, or education" to so testify. *See* NDREv Rule 702. And, under NDREv Rule 703, he could base this opinion on records documenting discovery of the opening. See the Notes of Advisory Committee to FedREv Rule 703, from which our Rule 703 was derived. In *State v. Fontaine,* 382 N.W.2d 374, 377 (N.D. 1986), we said:

"Rules 702 through 706 of the North Dakota Rules of Evidence govern the admissibility of testimony by expert witnesses. The test for admission of expert testimony is whether or not such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue and whether or not the witness is qualified as an expert. [citations omitted] The determination to admit or not to admit expert testimony rests within the sound discretion of the trial court, and its determination will not be reversed on appeal unless the court has abused its discretion." [citations omitted]

 But, quoting from many medical malpractice decisions by this court, Collom insists evidentiary rules on use of testimony of medical malpractice experts have

been refined by our decisions. She urges "that the standard of care ... in North Dakota is such that an expert witness testifying about the care and treatment rendered by a defendant ... has to be commensurate or consistent with the same school of medicine, same field of medicine, same general line of practice as the defendant ... and under similar circumstances." We disagree.

■ The notion that a medical witness must be of the same "school of medicine" as the medical defendant has not been significant for a long time, even before this state adopted the Federal pattern of evidentiary rules. "It is not the school which he follows; but his knowledge, experience, and special training which qualifies the witness to testify as an expert in such cases." *Ness v. Yeomans*, 60 N.D. 368, 234 N.W. 75, 76 (1931). If the medical witness has such "knowledge, experience [or] special training," an objection about his particular field or practice only goes "to the weight of his testimony, rather than to his competency to testify." *Benzmiller v. Swanson*, 117 N.W.2d 281, 288 (N.D.1962). That, plainly, is what our current rules of evidence contemplate. NDREv Rule 702 says:

## "RULE 702. TESTIMONY BY EXPERTS

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The Notes of Advisory Committee on Proposed Rules for the identical FedREv Rule 702 say:

"Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue with-

out enlightenment from those having a specialized understanding of the subject involved in the dispute.' Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952). When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time. 7 Wigmore § 1918." Federal Civil Judicial Procedure and Rules (1987 West Publishing Company), p. 307.

We are unwilling to complicate the standards for qualifying an expert, so carefully stated in the rule of evidence, by adding an unexpressed refinement through one decision.

■ Collom also seems to argue that there was no specific showing that Dr. Eisenberg was familiar with the surgical technique used by Dr. Lutz. The argument notes that, although both were surgeons, Dr. Lutz specialized in obstetrics and gynecology, while Dr. Eisenberg's expertise was in gastroenterology. A few courts have held that, to testify on the standard of care for a particular surgical technique, "a medical witness must have some familiarity with the particular medical or surgical technique involved in suit, unless the technique itself is so unique, as where the defendant is its sole practitioner, that no witness familiar with it is available." *See* Annotation, *Medical Malpractice: Necessity and Sufficiency of Showing of Medical Witness' Familiarity with Particular Medical or Surgical Technique Involved in Suit*, 46 A.L.R.3d 275, 278 (1972). Without adding such a refinement to our rule, we observe that Dr. Eisenberg did not testify about the surgical technique used by Dr. Lutz. Dr. Eisenberg's testimony focused on the causes of the opening in Collom's colon and its treatment—subjects clearly within his gastroenterology expertise. His testimony surely helped the jury to understand the evidence and to determine the facts. That is all that the rule requires.

We conclude that the trial court did not abuse its discretion in allowing the evidentiary use of Dr. Eisenberg's testimony. Accordingly, we affirm.

ERICKSTAD, C.J., GIERKE and LEVINE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of VANDE WALLE, J., disqualified.