**Darryl THOMAS, Plaintiff and Appellant,**

v.

**Leonard STICKLAND and Transport, Inc., Defendants and Appellees.**

**Civ. No. 920231.**

Supreme Court of North Dakota.

May 26, 1993.

Howe, Hardy, Galloway & Maus, PC, Dickinson, for plaintiff and appellant; argued by Timothy H. Wegner.

Smith, Horner & Bakke, Bismarck, for defendants and appellees; argued by Randall J. Bakke.

MESCHKE, Justice.

Darryl Thomas appealed a jury verdict and judgment dismissing his personal injury action against Leonard Stickland and Transport, Inc. We affirm.

Thomas was a passenger in ·a pickup driven by Clint Wagner on I–94 near Fargo on January 12, 1988, when the pickup stalled after striking a snowdrift and was struck by a Transport, Inc. truck operated by Stickland. Thomas injured his left arm and elbow in the accident. Thomas settled with Wagner and then sued Stickland and Transport, Inc.

In a pretrial hearing before jury selection on the first day of trial, the trial court considered Thomas's motion in limine to prevent Stickland from introducing any evidence of the settlement between Thomas and Wagner. The court ruled that the fact of settlement could be introduced, but not the amount. The jury found that Stickland was not negligent. Thomas's claim was dismissed, and he appeals.

■ Thomas contends that the trial court erred in allowing evidence of the settlement. We agree.

■ Offers of compromise are generally not admissible to prove liability, nonliability, or the amount of a claim. *Zimprich v. North Dakota Harvestore Systems, Inc.,* 461 N.W.2d 425 (N.D.1990); *C.B.D. v. W.E.B.,* 298 N.W.2d 493 (N.D.1980); *Weigel v. Rippley,* 283 N.W.2d 123 (N.D.1979). Exclusion of settlement evidence is the norm, while admission of such evidence is the exception. N.D.R.Ev. 408 says, in part:

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim.

We explained the scope of that rule in *Zimprich,* 461 N.W.2d at 431:

> Rule 408, F.R.Ev., from which our rule was drawn, "extends the exclusionary treatment not only to offers of compro-

mise, but also to completed compromises when offered against the compromiser." 2 *Weinstein's Evidence,* ¶ 408[04] (1989). The objective of excluding evidence of compromise is to encourage compromise of disputed claims. 10 *Moore's Federal Practice* § 408.02 (1988). "The spectre of subsequent use [of a settlement agreement] to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent." *Branch v. Fidelity & Cas. Co. of New York,* 783 F.2d 1289, 1294 (5th Cir.1986). The rule excludes evidence of settlements between litigants and third parties, including plaintiffs and third parties. *McInnis v. A.M.F., Inc.,* 765 F.2d 240 (1st Cir.1985). "Rule 408 makes inadmissible evidence of compromise offers and agreements ... when the only relevance of such evidence is in tending to prove either liability or nonliability or the amount owing." David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 170 (Rev.Vol. 2, 1985). The main purpose of Rule 408 is to aid and encourage out-of-court compromises and settlements. *Id.,* § 171; 2 *Weinstein's Evidence* ¶ 408[02] (1992). *Branch v. Fidelity & Cas. Co. of New York,* 783 F.2d 1289, 1294 (5th Cir.1986), explains that the reason for encouraging voluntary settlements, of course, is that they "obviate the need for costly and time-consuming litigation."

■ While the rule excludes evidence of settlement to prove liability, nonliability, or the amount of a claim, it does allow settlement evidence offered for another purpose:

> This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, disproving a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

N.D.R.Ev. 408 (part). Whether to allow the evidence for another purpose is within the discretion of the trial court. *Branch v. Fidelity & Cas. Co. of New York,* 783 F.2d at 1294. In *Moser v. Wilhelm,* 300 N.W.2d 840, 845 (N.D.1980), this court held: "It was not an abuse of discretion for the trial

court to inform the jury that Long was no longer a party in the lawsuit because of a settlement." Thus, a trial court may allow the introduction of the fact that there has been a settlement to explain the absence of a former party in the lawsuit. Here, however, there was no such need to introduce evidence of a settlement, because Wagner was never a party to the lawsuit, and his absence did not require explanation.

It is overzealous to argue, as defense counsel does, that "the prior settlement was clearly admissible ... because it was offered for the purpose of proving bias or prejudice of the plaintiff, who attempted to testify that he was not compensated in the Wagner settlement for the injuries which were the subject of the instant lawsuit." Defense counsel's statement in closing argument to the jury—"Mr. Thomas has been paid once for these same injuries, don't pay him again"—makes it abundantly clear that the defendants wanted the settlement admitted into evidence to prove lack of liability for or invalidity of Thomas's claim against them, a purpose prohibited by N.D.R.Ev. 408. Furthermore, the trial court decided before the trial started, well before Thomas testified, to allow evidence of the fact of settlement. That timing belies the stated purpose.

We also do not agree with the argument that "the court had to instruct the jury regarding the Wagner settlement anyway, because plaintiff voluntarily testified regarding the Wagner settlement in response to questions by plaintiff's counsel." Once the trial court ruled that evidence of the fact of settlement would be received in evidence, Thomas's counsel had no choice but to present the case in accordance with the ruling.

■ We conclude that the trial court erred in ruling that evidence of the fact that Thomas had settled with Wagner was admissible in evidence. However, in view of other evidence about the circumstances of the accident, which we discuss later, we discern no possibility of prejudice to Thomas, and we conclude that the error was harmless.

Thomas contends that he was deprived of a fair trial by defense counsel's statement in his closing argument to the jury that "Mr. Thomas has been paid once for these same injuries, don't pay him again."

■ A party is limited on appeal to a review of questions presented to the trial court. *Olmstead v. First Interstate Bank,* 449 N.W.2d 804, 808 (N.D.1989). "It is not our function to seek out error, which the trial court was not given an opportunity to rectify, or to remake the record for review, or to allow second guesses on trial strategy." *Waletzko v. Herdegen,* 226 N.W.2d 648, 653 (N.D.1975). "Error may not be predicated on an argument of counsel unless there was a timely objection and a ruling by the trial court." *Glatt v. Bank of Kirkwood Plaza,* 383 N.W.2d 473, 481 (N.D.1986). *See also Hoffer v. Burd,* 78 N.D. 278, 49 N.W.2d 282 (1951). In *Anderson v. Otis Elev. Co.,* 453 N.W.2d 798 (N.D.1990), we held that, in addition to a timely objection to improper argument, counsel must request a cautionary instruction admonishing the jury to disregard the improper argument.

■ Even if counsel successfully preserves improper jury argument for appellate review, an improper argument does not necessitate a reversal of the verdict "unless it is likely that the misconduct affected the verdict and thus deprived the party against whom the argument was made of a fair trial." *Hoffer v. Burd,* 49 N.W.2d at 294. This court held in *In re Estate of Paulson,* 219 N.W.2d 132, 133, Syllabus ¶ 7 (N.D.1974):

> Improper argument of counsel of prevailing party is not ground for reversal of jury verdict unless there is a clear showing such misconduct deprived adverse party of a fair trial and where there is more than sufficient evidence to justify the verdict, the verdict will stand.

■ Thomas did not object to opposing counsel's improper argument to the jury, request a cautionary instruction, or move for a mistrial. Thomas has, therefore, failed to preserve the question for our review. Furthermore, although Thomas's counsel did not object to the improper jury

argument about being paid twice or request a cautionary instruction, the trial court gave a cautionary instruction on its own motion at the close of the attorneys' arguments to the jury:

Members of the Jury, would you please turn to page 23, 24 of your instructions. I consider Mr. Bakke's last statement mentioning that the plaintiff is going to be paid twice for this to be an improper statement. That is contrary to this instruction. You are not to consider any aspect of that settlement in your deliberations. This instruction clearly says that. Mr. Bakke was in total error when he told you that, and he should not have said it.

A jury is presumed to have followed the trial court's instructions, *State v. Kringstad*, 353 N.W.2d 302 (N.D.1984), and is presumed to have followed a trial court's admonition to disregard a statement. *State v. Janda*, 397 N.W.2d 59 (N.D.1986). Also, as discussed later, "there is more than sufficient evidence to justify the verdict", *In re Estate of Paulson*, 219 N.W.2d at 133, Syllabus ¶ 7, and we discern no possibility of prejudice as a result of the incorrect argument.

Thomas asserts that defense counsel's improper argument led the jurors "to believe that the system was allowing the Plaintiff double recovery" and that the trial court's admonition was ignored. Thomas argues: "There is no other explanation for a verdict which finds absolutely no negligence by Stickland in this case in view of all of the evidence of his negligence." In our view, the evidence presented at trial amply supports the verdict.

Thomas testified: (1) "She was blizzarding outside. Snowing and blowing." (2) They did not get off I–94 when they got to I–29, because "[t]here was a truck jackknifed there." (3) "We were headed west and she was snowing and blowing we come into an underpass there." (4) "She was blowing under that bridge there and there was the snow drift, and we didn't see the snow drift until we hit it with the pickup and it spun us around in a circle." (5) The pickup stalled and Wagner was trying to start it. (6) He could not dispute that "the pickup covered the vast majority of both driving lanes." (7) When they got to the railroad underpass, "the wind was blowing and snowing. It was just like a white sheet."

Stickland testified: (1) When he saw the pickup, he "realized [he] had no where to go." (2) His truck was hauling "contaminated fuel, but I believe it was gasoline and jet fuel that they had mixed at the pipeline." (3) "I thought it would be an awful worse accident if I jackknifed and tipped it over, if I would have tipped it over." (4) The Wagner pickup was "covering both lanes." (5) There was not "enough room available to stop [the] truck without having an impact."

Gerald Olson, the North Dakota Highway Patrolman who investigated this accident and "[a]round 2,500" others in his 28 years with the Highway Patrol, testified: (1) Where the highway runs underneath the railroad at the underpass, the road elevation is "18 to 20 feet lower than the lay of the land." (2) "[O]nce you got into the dip" to go under the railroad, the visibility "would fluctuate from just about nothing to 50 feet." (3) Wagner agreed that his pickup was in both lanes at the point of impact. (4) The accident was "[m]ore or less" "unavoidable for Mr. Stickland", and he did not "place any blame on Mr. Stickland for this accident." (5) When asked by Thomas's counsel if the accident was "unavoidable to Mr. Clint Wagner", Olson replied: "I couldn't say that. I wouldn't know."

This testimony amply sustains the jury verdict. As in *Bellon v. Bellon*, 244 N.W.2d 227, 229 (N.D.1976), "[t]here was no showing that appellant was denied a fair trial and there was sufficient evidence to justify the verdict." *See also In re Estate of Paulson*, Syllabus ¶ 7.

We affirm the jury verdict and judgment.

VANDE WALLE, C.J., and SANDSTROM and NEUMANN, JJ., concur.

LEVINE, J., concurs in the result.