1997 ND 152

Nancy BLESSUM, Plaintiff and Appellee,

v.

David SHELVER, Defendant and Appellant.

Civil No. 960345.

Supreme Court of North Dakota.

Aug. 11, 1997.

Chapman and Chapman, Daniel J. Chapman (argued), Bismarck, for defendant and appellant.

Olson, Burns, & Lee, Gary H. Lee (argued), Minot, for plaintiff and appellee.

MESCHKE, Justice.

[¶ 1] David Shelver appealed a $45,000 judgment on a jury verdict against him for assaulting Nancy Blessum, and appealed orders denying his motions for judgment as a matter of law and for a new trial. We affirm.

[¶ 2] Blessum and Shelver worked at the Heart of America Medical Center in Rugby in August 1993. Blessum was an operating room nurse, and Shelver was a nurse anesthetist. On August 18, Blessum went to Shelver's office to discuss her concerns about Shelver having informed his supervisor that

he did not want to work with Blessum on pediatric cases. Each described the meeting very differently.

[¶ 3] According to Blessum, Shelver immediately became angry when she calmly asked if it was true that he did not want to work with her. Shelver started shouting at her and shut the door to his office. He lost control and grabbed her by the shoulders and shook her violently. Shelver removed his hands when Blessum told him to do so. He threatened to have her fired if she mentioned the incident. Blessum fled the office in tears and fearing for her safety.

[¶ 4] According to Shelver, Blessum was irrational and uncontrolled when she confronted him about his scheduling request. He told her he was uncomfortable with her in the operating room because she did not pay attention when he was administering anesthesia to patients. Blessum strongly disagreed and became more unreasonable. To reason with her, Shelver grabbed Blessum's shoulders and said, "Nancy, look, I am trying to tell you something. Listen to what I'm saying." He insists he did not shake Blessum when he grabbed her.

[¶ 5] Blessum sued Shelver for assaulting her during that meeting. Shelver answered that he "was forced to take [Blessum] by the shoulders," but denied assaulting her. He counterclaimed that Blessum had slandered his reputation.

[¶ 6] At trial, Dr. Hubert Seiler testified that he examined Blessum the next day. He found red marks on her shoulders that were consistent with Blessum's version. He testified Blessum had muscle spasms in her back, neck, and shoulders and experienced emotional problems including difficulties at work, sleeping problems, and loss of appetite. Seiler prescribed sleeping pills, tranquilizers, and muscle relaxants to alleviate Blessum's problems. Seiler also referred her to a psychiatrist and suggested physical therapy. Blessum's attorney asked Seiler whether her trauma could have caused her emotional problems to a reasonable degree of medical certainty. Over the objection of Shelver's attorney, Seiler testified it was less likely her problems were directly related to the assault.

[¶ 7] Nurses Bibiana Carantes and Marilyn Goldade each testified. Carantes knew Blessum and Shelver were meeting nearby and could hear Shelver's angry voice over thirty feet away even after she closed her door. Both nurses talked to Blessum afterward, and she was upset and crying. They testified Blessum explained what had happened and showed them the marks on her shoulders.

[¶ 8] Blessum testified, in her relationship with Shelver, he had constantly criticized her. Shelver made a standing objection to the relevancy of this testimony. The trial court overruled his objection and asked for specific events. Blessum testified Shelver had gotten angry during an eye surgery and had yelled at everyone. She also testified Shelver made critical comments about her nursing abilities during another surgery.

[¶ 9] Blessum testified the incident with Shelver caused her physical and emotional problems. She described how Shelver grabbed her:

> I felt his fingers digging in me. I could feel the pressure. He had a very strong hold on me. He was so angry and irate that when he grabbed me to shake me, you could just feel the anger coming through all the way through the fingers into your skin.

She described the physical and emotional reactions she suffered. Although the bruises disappeared in a few days, Blessum testified she spent two years in physical therapy and still had problems with her neck and back. She was emotionally wrecked and could not eat, sleep, or work. She took a twenty-month leave of absence from the hospital, thus giving up $40,000 in income.

[¶ 10] On cross-examination, Shelver's attorney asked Blessum about the pain immediately after he removed his hands and referred to an interrogatory asking her about the pain's duration and any lasting effects. Shelver's attorney quoted the part of her

answer describing the duration of her physical pain. The rest of her answer described the humiliation she endured and continuing emotional effects. Over the objection of Shelver's attorney, the trial court admitted the entire answer as an exhibit.

[¶ 11] Shelver's attorney asked Blessum if she had gone to a hospital for trauma in 1978. Blessum's attorney objected that the time was too remote, and the trial court asked Shelver's attorney to make an offer of proof. Shelver's attorney simply responded that it was a proper question but admitted he had no evidence of trauma in 1978. The court sustained the objection of Blessum's attorney, and did not require Blessum to answer.

[¶ 12] Shelver's attorney asked Blessum if the real reason she quit working for two years was because the director of nursing had ordered her removed from the operating room:

> Q. (Shelver's attorney) Mrs. Blessum, you have stated here today that one of the reasons or the reason why you took this two-year leave from the hospital is because you were depressed and emotionally distraught and so forth. Did I understand you correctly?
>
> A. Yes, sir.
>
> Q. As a matter of fact, isn't it true that you were ordered removed from the operating room by the director of nursing?
>
> A. I had already taken my leave of absence before that.
>
> Q. But you were ordered out of the operating room by the director of nursing, were you not?

Blessum's counsel objected to this question as calling for hearsay. Shelver then offered an October 5, 1993, memo confirming Blessum had been transferred out of the operating room. The trial court ruled Blessum's testimony about a transfer order was hearsay, but left it open for Shelver's attorney to otherwise offer the October 5 memo into evidence or to have someone else testify about Blessum's transfer. Shelver's attorney did not renew the subject later.

[¶ 13] During rebuttal closing argument, Blessum's attorney made several critical remarks directed at Shelver's attorney. Shelver's attorney did not object to any of them.

[¶ 14] In a combined general verdict, the jury decided Blessum should recover $45,000 in damages from Shelver, and dismissed Shelver's counterclaim. Shelver moved for judgment as a matter of law and for a new trial. He argued he was entitled to judgment notwithstanding the verdict because the evidence of assault and injury was insufficient. Shelver argued he deserved a new trial for incorrect evidentiary rulings, improper closing arguments, and an excessive damage verdict. The trial court denied both motions, and Shelver appealed, posing ten separately stated issues.

## 1. Liability For Assault

[¶ 15] Without citing or discussing any comparable cases, Shelver argues he is entitled to judgment as a matter of law because the evidence, he contends, was insufficient to prove an assault or any injury from his conduct. Shelver argues there is no evidence that he acted wilfully to restrain or harm Blessum. Shelver also asserts Blessum's evidence linking his actions to her claimed injuries was insufficient, and that she failed to prove her loss of wages to a reasonable degree of certainty.

[¶ 16] A post-trial motion for judgment as a matter of law seeks judgment notwithstanding the verdict. *Barnes v. Mitzel Builders, Inc.*, 526 N.W.2d 244, 246 (N.D. 1995). In considering a motion for judgment notwithstanding, the trial court must apply a rigorous standard with a view towards preserving a jury verdict, and so must we on review. *Victory Park Apartments, Inc. v. Axelson*, 367 N.W.2d 155, 166 (N.D.1985). As we explained in *Fronk v. Meager*, 417 N.W.2d 807, 813 (N.D.1987), we will affirm the denial of a motion for judgment notwithstanding the verdict unless the evidence,

when viewed in the light most favorable to the litigant opposing the motion, dictates a conclusion only for the movant.

■ [¶ 17] The trial court instructed the jury that "[a] person commits an assault if he ... willfully causes bodily restraint or harm to another human being or places another human being in immediate apprehension of bodily restraint or harm." The evidence here, when viewed in the light most favorable to Blessum, supports the verdict that Shelver "willfully cause[d] [Blessum] bodily restraint or harm."

[¶ 18] Shelver admitted he purposefully grabbed Blessum by the shoulders, and Blessum testified he shook her. In doing so, his grip was strong enough to leave marks on her shoulders and to cause her physical pain. This evidence was enough to prove Shelver intentionally grabbed Blessum without regard for possible harm to her. The element of physical restraint was clearly proven.

[¶ 19] Blessum testified about the physical effects on her and her need for physical therapy, and other witnesses corroborated her testimony. Blessum also testified Shelver's acts caused her emotional pain and suffering. Finally, Blessum testified she could not work for twenty months after her traumatic experience. The evidence thus causally connected Shelver's conduct and Blessum's injuries.

## 2. New Trial

■ [¶ 20] Shelver argues the trial court erred in failing to grant him a new trial. We review a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *Ebach v. Ralston,* 510 N.W.2d 604, 611 (N.D.1994). We conclude the trial court's denial of his motion was not an abuse of discretion.

### A. *Evidentiary Rulings*

■ [¶ 21] Shelver urges the trial court made a slew of erroneous and prejudicial evidentiary rulings. Yet a trial court has

broad discretion on evidentiary matters. *Wetch v. Wetch,* 539 N.W.2d 309, 311 (N.D. 1995); *State v. Martinsons,* 462 N.W.2d 458, 460 (N.D.1990). We will not reverse rulings admitting or excluding evidence unless the court abused its discretion. *Id.* As we explained in *First Nat. Bank and Trust v. Brakken,* 468 N.W.2d 633, 636 (N.D.1991), a trial court abuses its discretion when it acts arbitrarily, unconscionably or unreasonably.

■ [¶ 22] Shelver argues the trial court should have allowed Blessum to answer his question about an alleged 1978 trauma. The court concluded an occurrence fifteen years earlier was too remote to be relevant. We will not disturb a trial court's decision to exclude evidence as too remote, absent an abuse of discretion that affected a litigant's substantial rights. *Dewitz by Nuestel v. Emery,* 508 N.W.2d 334, 338 (N.D.1993). Here, Shelver failed to make a sufficient offer of proof to help us review whether exclusion of this evidence prejudiced him. NDREv 103(a)(2); *see Wagner v. Peterson,* 430 N.W.2d 331, 333 (N.D.1988)("Without an offer of proof, we are unable to determine if the exclusion of testimony was prejudicial to the appellant."). We cannot say the trial court abused its discretion by excluding testimony about an unspecified prior injury to the claimant.

■ [¶ 23] Shelver argues the trial court should have excluded Blessum's testimony about their relationship before their confrontation. This testimony sketched a brief background of the relationship between these litigants. *See State v. Gefroh,* 495 N.W.2d 651, 654 (N.D.1993)(allowing testimony about accused's previous assault on victim as background). The trial court did not abuse its discretion in admitting this evidence.

■ [¶ 24] Shelver argues the trial court should not have admitted Blessum's entire interrogatory answer about her pain. He asserts the rest of the answer was unrelated to his question about the duration of her physical pain. The rules of evidence direct when a trial court should require admission

of a complete statement when only part is first introduced: "Whenever a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction *at that time* of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it." NDREv 106 (emphasis added). Here, Blessum's emotional pain was linked to the same physical assault and lasted longer than her physical pain. We conclude Blessum's complete answer was fairly admitted to show her entire statement about pain.

[¶ 25] Shelver argues the trial court improperly limited his cross-examination by not allowing him to question Blessum about the hospital's order transferring her out of the operating room. He argues her answer would not have been hearsay and should have been allowed. We agree.

[¶ 26] " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." NDREv 801. Here, Shelver was simply asking if Blessum knew the directing nurse had ordered her transferred out of the operating room. Her answer would not have been hearsay, but would have shown her knowledge.

[¶ 27] Although it was error for the trial court to bar this part of Blessum's cross-examination, Shelver has not convinced us that this error prejudiced him. Blessum testified the transfer order came after she took her leave of absence. Shelver did not proffer any evidence that Blessum's transfer from the operating room would have prevented her from working elsewhere in the hospital. The trial court offered Shelver other ways to develop evidence of the transfer, but he declined or failed to do so. We conclude the error in limiting Blessum's cross-examination was harmless.

[¶ 28] Shelver argues the trial court should not have allowed Dr. Seiler to testify about what caused Blessum's emotional problems. He complains Seiler was not a psychiatrist and thus not qualified to express an opinion about her mental condition. However, a physician can testify about another field of medicine within his experience even though it is not his specialty. *Collom v. Pierson,* 411 N.W.2d 92, 96 (N.D.1987). An objection about the extent of an expert's experience affects the weight of the testimony and not its admissibility. *Id.* Even more, here, Dr. Seiler's testimony tended to favor Shelver's position and could not have prejudiced him.

## B. *Improper Closing Argument*

[¶ 29] During his rebuttal closing argument, Blessum's attorney made several derogatory comments about trial preparation by Shelver's attorney:

> But if he doesn't ask the follow-up question during the deposition, he can't come to trial and then somehow suggest through some kind of verbal slight of hand that Marilyn Goldade is not telling you the truth. *He had his opportunity and he blew it.*
>
> So, Marilyn Goldade's testimony on the stand, just because it's a little bit different than her deposition, just because she goes into more detail on the stand than they went into in the deposition, *if that's anybody's fault at all, that's Mr. Chapman's.*
>
> . . .
>
> So, he says, where is Lois Burns? Well, why didn't Dan Chapman call Lois Burns if she was so important? She's equally available to him.
>
> He can subpoena her. We took her deposition. He could have read her deposition into the record. You're allowed to do that. You just get the deposition, you stand up, you read it, and you have it. . . .
>
> She's in his pocket, so there's nothing that attaches to Nancy Blessum for not produc-

ing Lois Burns.[1] ...

...

He had the right to ask for, when he had Hubert Seiler's deposition—he took Hubert Seiler's deposition. When he had Hubert Seiler at the deposition, he could have subpoenaed all of Nancy Blessum's records to date. He didn't do it.

*It's not my fault he doesn't do his job.* And it's not a reflection on Nancy's case that he doesn't ask for the stuff that he's equally entitled to have.

(emphasis added). Blessum's attorney also questioned the honesty of Shelver's attorney:

So, again, *don't be fooled by Mr. Chapman's arguments here.* He's trying to get you sidetracked on issues that really aren't here.

...

And Nancy's testimony is evidence. It's proof. You can consider it. So, when he tells you—*when Mr. Chapman tells you that there's been no evidence of a psychiatric injury, he's not being honest with you* because Nancy Blessum told you about it, and so did Dr. Seiler.

They both told you about the psychological and emotional injury. And again, if it's so important, why didn't Mr. Chapman bother to depose Dr. Garofalo or have him subpoenaed here? He has those powers.

(emphasis added). Shelver argues these closing arguments were improper and made the trial unfair. He contends a new trial is the only appropriate remedy.

 [¶ 30] In general, counsel must make a timely objection to an improper argument and must ask the trial court to give a curative instruction to the jury. *Thomas v. Stickland,* 500 N.W.2d 598, 601 (N.D.1993). Failure to object waives the improper argument. *Anderson v. Otis Elevator Co.,* 453 N.W.2d 798, 801 (N.D.1990). In *Andrews v. O'Hearn,* 387 N.W.2d 716, 731 (N.D.1986), we

discussed the single exception to this rule of waiver:

The only exception to the general rule requiring objection to improper closing argument is when the misconduct of counsel is so severe that it affects that party's substantial rights or constitutes a denial of a fair trial, thereby placing an independent duty upon the court to confine the attorney to the permissible bounds of argument, where necessary, and admonish the jury.

(citing *Fox v. Bellon,* 136 N.W.2d 134 (N.D. 1965), and *Bradley v. Krogen,* 67 N.D. 108, 270 N.W. 93 (1936)). Here, we agree the closing comments of Blessum's attorney were improper, but we conclude any error was waived unless the error was so serious that it was inconsistent with substantial justice.

[¶ 31] Blessum's attorney recognized during oral argument to this court that he overstepped propriety, but insists he was responding to closing argument by Shelver's attorney. Still, he could have effectively responded to Shelver's attorney without insulting his ability or integrity as an attorney.

 [¶ 32] An attorney must refrain from potentially prejudicial comments during closing argument. *Andrews,* 387 N.W.2d at 731. In particular, an attorney should not make derogatory personal remarks about the opposing counsel. 75A Am.Jur.2d *Trial* § 683 (1991). *See generally* B.K. Carpenter, Annotation, *Prejudicial effect, in argument or summation in civil case, of attacks upon opposing counsel,* 96 A.L.R.2d 9 (1964 & Supp.1993). As the court in *Las Palmas Assoc. v. Las Palmas Center Assoc.,* 235 Cal.App.3d 1220, 1 Cal.Rptr.2d 301, 315 (1991), explained:

Personal attacks on opposing parties and their attorneys, whether outright or by insinuation, constitute misconduct. Such behavior only serves to inflame the passion and prejudice of the jury, distracting them from fulfilling their solemn oath to render

---

**1.** The statement that Lois Burns was "in his pocket" referred to the equal availability of that witness to Shelver's attorney and not to some

influence the attorney had over her. Still, this comment unduly criticized Shelver's attorney directly in a personalized way.

a verdict based solely on the evidence admitted at trial. Lack of civility between counsel, moreover, only breeds public disrespect for the judicial process.

(citations omitted). A "lawyer's actions in the course of the representation must be consistent with the requirements of honest dealing with the opposing party and counsel." Comment to Rule 3.4 ("Fairness to opposing party and counsel"), North Dakota Rules of Professional Conduct. A personal attack by a trial attorney on the opposing attorney is unacceptable conduct.

[¶ 33] Although arguments of Blessum's attorney were improper, they were not so serious as to deprive Shelver of a fair trial when there was no objection that would have given the trial court an opportunity to take corrective action. In assessing prejudice, we consider the analysis of the trial court because it was in a better position to weigh the impact of the misconduct. *Andrews*, 387 N.W.2d at 731. The trial court explained why these remarks by Blessum's attorney did not prejudice Shelver:

As the Court witnessed during the trial presentation itself and through its review of the record, the Court does not find that these few comments prejudiced the jury. In regards to the prejudicial claim by [Shelver], he states, "We argue, of course, that the conduct in this case was clearly prejudicial and is a case where there should have been no verdict at all for the plaintiff but, if there had been a verdict, it should have been for a nominal figure, not to exceed a few thousand dollars, there clearly was prejudice." ... As the Court previously indicated in this opinion, it appears that the jury had sufficient proof to award damages in the amount they determined.

Consequently, [Shelver's] motion for a new trial based upon misconduct of [Blessum's] attorney due to his comments in closing arguments is denied. It appears to the Court [Blessum's] counsel's remarks were not prejudicial and did not affect [Shelver's] substantive rights nor did they constitute a denial of a fair trial to [Shelver].

We agree with the trial court.

[¶ 34] Nor does Shelver's reliance on *Bradley v. Krogen* and *Fox v. Bellon* change our conclusion. In *Bradley*, this court affirmed a trial court's order granting a new trial for misconduct of a witness during a trial, including loudly characterizing the defendant as a "crook" in the presence of some of the jurors. 67 N.D. 108, 270 N.W. 93. We held the trial court did not abuse its discretion. *Id.*, 270 N.W. at 97. In *Fox*, this court affirmed denial of a new trial where the attorney for the prevailing claimant used "liar," "pathological liar," and "crook" to characterize the defendant during rebuttal closing argument. 136 N.W.2d at 139–40. As in this case, no objection was made, and no motion for mistrial was made during the trial. This court agreed the argument was improper and misconduct, but a majority of the court concluded it did not result in an unfair trial and was not prejudicial. *Id.* at 140. The majority concluded that the trial court was in a better position to gauge the prejudicial effect, if any, and that the trial court did not abuse its discretion in denying a new trial to the defendant. *Id.* Compare *City of Williston v. Hegstad*, 1997 ND 56, 562 N.W.2d 91 (prosecutor's improper closing arguments reversible error where trial court abused its discretion in overruling objections). Our precedents counsel affirmance of the denial of a new trial in this case.

[¶ 35] The evidence in this case supported the verdict. The trial court instructed this jury that the arguments of an attorney were not to be considered evidence. *See Holte v. Carl Albers, Inc.*, 370 N.W.2d 520, 526–27 (N.D.1985)(no prejudice from improper arguments when jury instructed not to consider comments by counsel as evidence). Juries are presumed to have followed instructions. *Thomas v. Stickland*, 500 N.W.2d at 602. We conclude the trial court was not required on its own initiative to interrupt the closing argument by Blessum's attorney, although it certainly could have done so. In our opinion, the trial court did not abuse its discretion in denying Shelver's motion for a new trial.

### C. Excessive Damages

[¶ 36] Shelver argues he is entitled to a new trial or a reduction of the verdict

because the jury's damage amount was excessive. He contends the $45,000 verdict is not supported by the evidence and could only have happened from passion and prejudice. We disagree.

[¶ 37] A trial court may grant a new trial, order a reduction, or grant a remittitur of the verdict if "[e]xcessive damages appear[ ] to have been given under the influence of passion or prejudice." NDRCivP 59(b)(5). A trial court's decision to grant or deny a new trial for an excessive damage verdict is discretionary and will not be overturned unless an abuse of discretion has been demonstrated. *Roberts v. Hail Unlimited,* 358 N.W.2d 776, 781 (N.D.1984). It is presumed that a damage verdict is proper, and this presumption is overcome only when the jury's verdict is so excessive that it shocks the conscience of the court. *Id.*

[¶ 38] Blessum testified that she did not work for twenty months as a result of Shelver's assault, and thus lost $40,000 in income. Shelver did little to contest this evidence of wage loss, and Blessum's testimony alone was enough to prove her loss. *See Olmstead v. First Interstate Bank,* 449 N.W.2d 804, 807 (N.D.1989)(corroborating evidence for claimant's testimony of wage loss not required). In addition to her economic loss, Blessum asked the jury for $25,000 to compensate for her emotional distress and humiliation. "When determining compensatory damages, a jury may properly consider wounded feelings, mental suffering, humiliation, degradation, and disgrace." *Binstock v. Fort Yates Pub. Sch. Dist. No. 4,* 463 N.W.2d 837, 842 (N.D.1990). We are not shocked by this verdict. We conclude the trial court did not abuse its discretion in denying a new trial or a verdict reduction on damages.

### 3. Conclusion

[¶ 39] We affirm the jury verdict of $45,000 in damages to Blessum for her injuries when Shelver assaulted her. We affirm the orders denying Shelver's motions for judgment as a matter of law and for a new trial.

[¶ 40] VANDE WALLE, C.J., SANDSTROM and MARING, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

[¶ 41] RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of NEUMANN, J., disqualified.

