1998 ND 145

**Shareef ALI, a minor, by his father and natural guardian, Sayel ALI, Plaintiff and Appellant,**

**v.**

**DAKOTA CLINIC, LTD., a North Dakota corporation, Defendant**

**and**

**Dakota Hospital, Defendant and Appellee**

**Civil No. 970340.**

Supreme Court of North Dakota.

Aug. 18, 1998.

Miller, Norman & Associates, Moorhead, MN for plaintiff and appellant; argued by Keith L. Miller.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant and appellee Dakota Hospital; argued by Jack G. Marcil.

MESCHKE, Justice.

[¶ 1] Shareef Ali, by his father, Sayel Ali, appealed an order denying his motion for a new trial on his medical negligence claim

after a jury verdict for Dakota Hospital. We affirm.

[¶ 2] Shareef was born at Dakota Hospital on Wednesday, June 6, 1990, and discharged with his mother on Friday, June 8. During his first weekend at home, Shareef's parents, Sayel and Feryal Ali, noticed he was turning yellow. On Monday, Feryal called the hospital nursery and was instructed to bring Shareef back to the hospital. Later that day, Feryal and Sayel returned to the hospital with Shareef. Shareef was diagnosed with hyperbilirubinism (jaundice), placed in the neonatal intensive care unit, and received multiple full-volume blood transfusions. From the jaundice, Shareef suffered a serious brain injury and remains permanently disabled.

[¶ 3] Shareef sued Dakota Clinic, Ltd. and Dakota Hospital, alleging negligence in his care and in the instruction of his parents. During the jury trial, from a settlement stipulation, the trial court dismissed the claim against Dakota Clinic. The jury returned a special verdict finding Dakota Hospital was not negligent, and the trial court entered a judgment dismissing Shareef's claim against it with prejudice.

[¶ 4] Shareef moved for a new trial, alleging the jury's "unjust verdict [was] irretrievably tainted by [defense counsel's] prejudicial remarks." After a hearing, the trial court entered an order denying the motion. Shareef appealed.

[¶ 5] We review a trial court's denial of a motion for a new trial under an abuse-of-discretion standard. *Blessum v. Shelver*, 1997 ND 152, ¶ 20, 567 N.W.2d 844. "[A] trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably." *Id.* at ¶ 21. We conclude the trial court did not abuse its discretion.

[¶ 6] Shareef argues he is entitled to a new trial because statements made during Dakota Hospital's closing argument to the jury were improper, prejudicial, and denied him a fair trial. Dakota Hospital responds "[a]ny alleged prejudice was remedied by the trial court's instructions to the jury." We review the alleged improper statements in context.

[¶ 7] In his closing argument, Shareef's counsel attempted to justify to the jury a damage award of seven million dollars:

Now, when it comes to noneconomic damages for pain, suffering, disability, the Court will tell you I think in so many words there's really no yardstick as to how to do it. And you'll have to rely upon your own common experience and judgment to figure out what would be appropriate for Shareef in this case. And I think that's a difficult task. You know, the way we compensate people in this society is kind of strange.

I read in the paper the other day that a football player, Steve Young, will get $15 million a year to play football. That's his compensation for the privilege of playing football. We know that a guy named Mike Tyson got about $40 million for a fight not too long ago. That makes no sense to me whatsoever. We know that CEOs of large corporations get millions of dollars for the privilege of running those corporations, and they even get millions of dollars in severance packages, like the guy at Apple just did, and he does a lousy job.

[¶ 8] In his closing argument to the jury, Dakota Hospital's counsel argued:

Now, one of the—one of the things in terms of talking about this education and what went on, I noted that Linda Carver took care of Mrs. Ali for nine months before the birth. Linda Carver did not testify on behalf of the Alis. We can assume that she would have testified that Mrs. Ali did understand the pregnancy instructions and those things....

. . . .

So it's difficult, because we're dealing with a child, it's difficult to say, no, that the hospital wasn't negligent, and the clinic wasn't negligent. But that's our system. This is not a system that you can just bring a claim and come in and walk out a millionaire. And this is not Las Vegas. This is not the house of instant millions. And that's right. It shouldn't be. You must prove your case. And I suggest to you that there was no negligence here. There was no negligence here. And I ask

you to—to reach that verdict. And that would be a fair verdict. That would be a very fair, understandable verdict for all people concerned. And it would be a just verdict.

At the conclusion of Dakota Hospital's closing argument, the trial court recessed the jury. Shareef's counsel then objected to these two aspects of the closing argument for Dakota Hospital, alleging they were prejudicial.

[¶ 9] The trial court sustained Shareef's objection to the statement about Linda Carver not being called as a witness and granted his request for a curative instruction on that. The court, however, overruled Shareef's objection to the statements on damages, particularly the references to Las Vegas and millionaires.[1]

[¶ 10] When the jury reconvened, the trial court gave it the curative instruction requested by Shareef:

Ladies and gentlemen, at this time I'm going to instruct you that as the jury on this particular case, you are to draw no inference whatsoever from the fact that Nurse–Midwife Linda Carver failed to testify.

Shareef's counsel then gave his rebuttal, and then the court gave the jury final instructions. These instructions included "Statements by Counsel and Judge" and "Statements of Counsel," both informing the jury that a counsel's statements are not evidence.

[¶ 11] After nine hours of deliberations, the jury sent a note to the judge saying they were deadlocked. Dakota Hospital moved for a mistrial, and Shareef opposed the motion. The trial judge denied the motion and read Pattern Jury Instruction 1750 on "Deadlocked Jury" to the jury before excusing them for the evening. The next day, the jury resumed deliberations and shortly returned the special verdict for Dakota Hospital.

[¶ 12] "In general, counsel must make a timely objection to an improper argument and must ask the trial court to give a curative instruction to the jury. Failure to object waives the improper argument." *Blessum*, 1997 ND 152, ¶ 30, 567 N.W.2d 844 (citation omitted). In *Thomas v. Stickland*, 500 N.W.2d 598, 601 (N.D.1993), we explained the appealing party must show more than just a timely objection to an improper argument:

Even if counsel successfully preserves improper jury argument for appellate review, an improper argument does not necessitate a reversal of the verdict "unless it is likely that the misconduct affected the verdict and thus deprived the party against whom the argument was made of a fair trial." *Hoffer v. Burd*, 49 N.W.2d at 294. This court held in *In re Estate of Paulson*, 219 N.W.2d 132, 133, Syllabus ¶ 7 (N.D.1974):

Improper argument of counsel of prevailing party is not ground for reversal of jury verdict unless there is a clear showing such misconduct deprived adverse party of a fair trial[,] and where there is more than sufficient evidence to justify the verdict, the verdict will stand.

Thus, an improper argument does not compel a new trial unless the complaining party can show the improper comments deprived him of a fair trial. *Blessum*, 1997 ND 152, ¶ 33, 567 N.W.2d 844. Here, although Shareef made a timely objection, he has not shown how the statements made during Dakota Hospital's closing argument deprived him of a fair trial.

[¶ 13] We have emphasized, when we assess alleged prejudicial statements, "we consider the analysis of the trial court because it was in a better position to weigh the impact of the misconduct." *Blessum* at ¶ 33. Here, the trial court explained in its memorandum order denying the motion for a new trial:

[T]he plaintiff specifically objected to defense counsel's comment to the effect

---

1. At oral argument on this appeal, Shareef's counsel, who served as co-counsel during trial, conceded the only statement contested is the one referencing Las Vegas and millionaires. At the trial court's hearing on the motion for a new trial, Shareef's counsel had said the statement about Linda Carver was not "an independent basis for the new trial motion," but was mentioned only to show "the cumulative effect ... between that Linda Carver comment and this egregious comment concerning Las Vegas."

that "this is not a system that you can just bring a claim and come in and walk out a millionaire." At the time this objection was originally raised, it was overruled by the Court. Taken within its context, [Dakota Hospital's counsel's] comment appears to be contrasting our system of justice where a claimant must prove negligence before being awarded damages with Las Vegas, the "house of instant millions." [Dakota Hospital's counsel's] statement ties into the basic theme of his closing argument—Dakota Hospital is not responsible for what happened to [Shareef]. [Dakota Hospital's counsel] argues that even if the hospital's employees were negligent in their instructions and training given to the parents, it is a giant leap from instruction to proximate cause and finding the hospital responsible for millions of dollars. Taken within the context of [Dakota Hospital's] entire closing argument, and considering that [Shareef's] counsel suggested the jury award [Shareef] damages totaling seven million dollars, [Dakota Hospital's counsel's] Las Vegas reference is not out of line.

(citations to the transcript omitted). In addition, the court noted "this jury was instructed in two separate instructions that arguments by counsel are not evidence." The court concluded, "[t]his Court is not convinced the jury verdict was rendered under the influence of passion or prejudice ignited or fanned by defense counsel, or that [Shareef] was prevented from having a fair trial."

[¶ 14] We agree. When we compare Dakota Hospital's closing argument with Shareef's, the statements about becoming a millionaire seem to us to be fair counterpoints to Shareef's argument about persons receiving multi-million dollar compensation. While the reference to Las Vegas was uninvited, we cannot say the references to millionaires and windfalls unduly prejudiced the jury in reaching the verdict.

[¶ 15] Similarly, we conclude the reference to Las Vegas was inappropriate, but it was not significantly prejudicial to Shareef. The statement, "[a]nd this is not Las Vegas," was closely followed by the statement "[y]ou must

prove your case." Together, these two statements correspond to Dakota Hospital's theme that "there was no negligence here."

[¶ 16] We have previously explained the wide bounds of permissible closing argument:

To be prejudicial, absent a fundamental error, improper closing argument ... must have stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence. "[A counsel] is allowed a wide latitude of speech, and must be protected therein. He has a right to be heard before the jury upon every question of fact in the case, and in such decorous manner as his judgment dictates. It is his duty to use all the convincing power of which he has command, and the weapons of wit and satire and of ridicule are all available to him so long as he keeps within the record."

*State v. Schimmel*, 409 N.W.2d 335, 342–43 (N.D.1987)(quoting *State v. Loyland*, 149 N.W.2d 713, 731 (N.D.1967)). As the trial court did, we review Dakota Hospital's statements within the context of both counsels' closing arguments, and we conclude Dakota Hospital's statements were not prejudicial.

[¶ 17] We agree with the trial court the jury's verdict was not "rendered under the influence of passion or prejudice ignited or fanned by defense counsel," although individual phrases within Dakota Hospital's closing argument were inappropriate. Therefore, we affirm the trial court's order denying a new trial.

[¶ 18] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ. concur.