# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 65

Shawn Kluver, Seven Star Holdings, LLC,
and Little Knife Disposal, LLC,

Plaintiffs and Appellees

v.

SGJ Holdings, LLC, GO Capital, LLC,
3DP, LLC, Environmental Driven Solutions,
LLC, Renewable Resources, LLC, Gary
Olsen, K. Jayce Howell, and Jeff Bennett,

Defendants and Appellants

## No. 20220132

Appeal from the District Court of Dunn County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Ariston E. Johnson, Watford City, N.D., for plaintiffs and appellees.

Christina A. Sambor (argued) and Carey A. Ziemann Goetz (appeared), Bismarck, N.D., and Michael T. Andrews (on brief), Fargo, N.D., for defendants and appellants.

**Tufte, Justice.**

[¶1]   The defendants appeal from a judgment and order denying their motion for a new trial after a jury found in favor of the plaintiffs on their claims of breach of contract, conversion, deceit, defamation, and unlawful interference with business and the district court quieted title in plaintiff Seven Star Holdings. The defendants argue the court erred by failing to decide whether a joint venture existed and in quieting title; there was insufficient evidence supporting the jury verdict on the claims of breach of contract, conversion, defamation, and unlawful interference with business; and the verdict violates the law of comparative fault. We affirm, concluding the defendants waived their arguments on joint venture, quiet title, breach of contract, and comparative fault; and the court did not abuse its discretion in determining the verdict was not manifestly against the weight of the evidence and rejecting the defendants' new trial motion.

I

[¶2]   Seven Star Holdings ("Seven Star") is a company that Shawn Kluver started and still owns. In late 2010 or early 2011, Kluver founded Renewable Resources ("Renewable"), an oilfield waste treatment business, with non-party partners. Kluver owned 30% of Renewable through Seven Star. In fall 2012, Kluver founded Environmental Driven Solutions ("EDS"), a fluids disposal business, without partners, owning 100% through Seven Star. In January 2013, Seven Star purchased ranch land in Dunn County. Gary Olsen and K. Jayce Howell agreed to finance the ranch purchase. Seven Star deeded the ranch to GO Capital, a company owned by Olsen, as security for the loan.

[¶3]   In summer 2013, Olsen and Howell bought out Kluver's partners in Renewable. Kluver also sold Olsen and Howell part of EDS. Kluver, Olsen, and Howell formed a holding company named SGJ Holdings ("SGJ"), with Kluver owning 50% through Seven Star and Olsen and Howell owning 50% through their company 3DP. Kluver, Olsen, and Howell eventually transferred 100% of Renewable and 100% of EDS to SGJ. They agreed that Kluver was to receive

EDS's pre-closing accounts receivable, a salary of $200,000 per year, and a commission of 5% of all gross sales from EDS and Renewable, and that the remaining debt on the loan from GO Capital to Seven Star to finance the ranch was to be forgiven ("2013 contract"). At trial, the jury found Renewable breached the 2013 contract, awarding Kluver and Seven Star $260,000.

[¶4]   In January 2016, Kluver, Olsen, and Howell agreed that Seven Star's 50% share of SGJ would be bought out for $1,000 and "other good and valuable consideration," effective January 1, 2015. The parties agreed that Seven Star would buy its 50% share back from SGJ for $1,000 and other consideration once SGJ received sufficient funding to repay amounts owed to GO Capital. Kluver testified he was not allowed to buy back his 50% share in SGJ and was not paid for his 50% share, which he valued to be at least $3,000,000. The jury found SGJ and 3DP, which owned SGJ, breached agreements with Kluver and Seven Star, awarding them $1,000 for SGJ's breach and $544,000 for 3DP's breach.

[¶5]   The parties also agreed in January 2016 that Kluver would become an employee of Renewable with a salary of $204,000 per year plus bonuses and benefits including a retirement plan and he would receive severance pay of $500,000 if he were terminated without cause ("2016 employment contract"). In fall 2017, Renewable manager Jeff Bennett fired Kluver. The jury found Renewable breached the 2016 employment contract and awarded Kluver and Seven Star $500,000.

[¶6]   In February 2017, Little Knife Disposal ("Little Knife") was formed, with Kluver owning 100% of the company. Kluver misrepresented to Olsen and Renewable that 3DP owned Little Knife. Kluver directed Renewable personnel and equipment to be used to clean up and operate Little Knife's disposal site. Kluver testified that he emailed Howell and Olsen in June 2017, stating that he was sole owner, but 3DP could be changed to the owner if they requested such change. No change in ownership was made. Howell opened a bank account in Little Knife's name, and 3DP, EDS, and Renewable requested that Little Knife's customers deposit their payments into the account. Customer payments in the amount of $479,608 were deposited into the account, which

were eventually transferred to an account owned by EDS. The jury found the defendants converted $479,000 of Little Knife's property.[1]

[¶7]   Kluver testified that in April 2020 criminal charges were filed against him for theft and exploitation of an eligible adult. Bennett testified that he told law enforcement that he believed Kluver stole approximately $5.38 million from EDS, Renewable, and SGJ. He also testified that he spoke with reporters about the charges. The charges were eventually dismissed. Kluver testified the criminal charges led to reputational damage to himself and Little Knife. Kluver testified that Little Knife's 2020 sales were approximately $4,000,000 less than its 2019 sales, citing oil producers' unwillingness to do business with Little Knife as the primary reason for the decrease in sales. The jury found in favor of the plaintiffs on their claims of deceit, defamation, and unlawful interference with business. The jury awarded zero dollars for the deceit and defamation and $2,000,000 against the defendants for the unlawful interference with business.

[¶8]   After trial, the district court quieted title in the ranch in favor of Seven Star and entered judgment. The defendants moved for a new trial under N.D.R.Civ.P. 59 and 60. The court denied the motion.

II

[¶9]   The plaintiffs argue that several issues raised by the defendants on appeal are waived because they were not raised in the defendants' motion for a new trial. When a party moves for a new trial, that party is limited to the issues raised in its motion:

> [I]t is well settled that where a motion for a new trial is made in the lower court the party making such a motion is limited on appeal to a review of the grounds presented to the trial court. This restriction of appealable issues applies not only to review of a denial of the motion for a new trial, but also to the review of the appeal from the judgment itself . . . . [T]his rule forecloses appellate

---

[1] The jury also found that EDS converted $2,200 of Kluver's personal property, which was sold at auction. The defendants do not challenge this finding.

3

> review of alleged errors . . . which were not raised on the motion for a new trial.

*Prairie Supply, Inc. v. Apple Elec., Inc.*, 2015 ND 190, ¶ 7, 867 N.W.2d 335. "A motion for new trial is not necessary for appellate review, but when a new trial is sought, the moving party is limited on appeal to the grounds presented to the district court in the motion for a new trial." *Id.*

[¶10] The defendants moved for a new trial on the following grounds: 1) the jury was influenced by passion or prejudice against them based on references to wealth, 2) there was insufficient evidence to support the jury's verdict as to the claims of breach of the 2016 employment contract, conversion, defamation, and unlawful interference with business, and 3) the court erred by failing to instruct the jury on comparative fault and determining the defendants are jointly and severally liable. Thus, the defendants are precluded from arguing on appeal that the district court erred by failing to decide whether a joint venture existed and in quieting title to the ranch.

[¶11] In addition to waiving issues not raised in their new trial motion, the defendants failed to raise issues prior to the new trial motion. The defendants argued in their new trial motion and now on appeal that Kluver first breached the 2016 employment contract with Renewable, as provided by the judicially established facts in the jury instructions, excusing Renewable's later breach of that same contract. They argue for the first time on appeal that res judicata or collateral estoppel precluded this claim. Arguments raised for the first time on appeal are generally waived. *Working Capital No. 1, LLC v. Quality Auto Body, Inc.*, 2012 ND 115, ¶ 13, 817 N.W.2d 346. Further, the defendants did not object to the special verdict form requiring the jury to determine whether this claim was proven, request a jury instruction informing the jury to excuse its breach if it found Kluver first breached the contract, or request a question on the special verdict form asking whether Kluver first committed a material breach of the contract. Under N.D.R.Civ.P. 49(a)(3), "A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury." It was not until the jury found in favor of the plaintiffs on their claim of breach of the 2016 employment contract that the defendants argued the

claim is precluded by the judicially established facts as stated in the jury instructions. Accordingly, the defendants waived this issue.

[¶12] The defendants also argue that the district court erred by failing to instruct the jury on the entirety of the modified comparative fault statute, N.D.C.C. § 32-03.2-02, and failing to instruct the jury to apportion fault. The court found that the defendants did not request these instructions be given or to place questions apportioning fault on the special verdict form. In fact, the court specifically asked about a comparative fault instruction at trial, and counsel for the defendants invited any error by responding that there was no comparative fault issue in the case and by failing to take the opportunity presented by the district court to add a comparative fault instruction if either party requested it. "Unopposed jury instructions become the law of the case." *Twete v. Mullin*, 2019 ND 184, ¶ 21, 931 N.W.2d 198. Thus, the jury instructions became the law of the case, and the defendants waived any right to have the jury apportion fault among the parties. *Horstmeyer v. Golden Eagle Fireworks*, 534 N.W.2d 835, 840 (N.D. 1995) (concluding defendants waived right to have jury apportion fault by failing to specifically demand its submission to the jury and thus there was no error in failing to give requested instruction on apportionment of fault).

## III

[¶13] The defendants assert the district court erred in denying their motion for a new trial, because the evidence was insufficient to support the jury's verdict. Our standard of review of an appeal from a denial of a motion for a new trial is "limited to a determination of whether or not the trial court manifestly abused its discretion." *Bjorneby v. Nodak Mut. Ins. Co.*, 2016 ND 142, ¶ 13, 882 N.W.2d 232.

> [A] district court considering a motion for a new trial based on insufficiency of the evidence may not substitute its own judgment for that of the jury, or act as a thirteenth juror when the evidence is such that different persons would naturally and fairly come to different conclusions, but may set aside a jury verdict when, in considering and weighing all the evidence, the court's judgment

5

> tells it the verdict is wrong because it is manifestly against the
> weight of the evidence.

*Twete*, 2019 ND 184, ¶ 29.

A

[¶14] The defendants argue the judicially determined facts conclusively establish that they did not convert Little Knife's customer payments. The judicially determined facts state that Kluver misrepresented to Olsen and Renewable that 3DP owned Little Knife and that Kluver used Renewable personnel and equipment to clean up and operate Little Knife's disposal site. However, these facts do not negate a finding of conversion. "Conversion consists of a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner." *Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 11, 680 N.W.2d 634. The parties stipulated that Howell opened a bank account in Little Knife's name, and 3DP, EDS, and Renewable requested that Little Knife's customers deposit their payments into the account. Customer payments in the amount of $479,608 were deposited in the account, which were eventually transferred to an account owned by EDS. The jury found the defendants converted $479,000 of Little Knife's property. We conclude the district court did not abuse its discretion in determining the verdict was not manifestly against the weight of the evidence and denying the new trial motion on this ground.

B

[¶15] The defendants argue there was insufficient evidence to support the jury's verdict finding they defamed Kluver.

[¶16] Defamation takes the form of either libel or slander. N.D.C.C. § 14-02-02. Libel is a false and unprivileged publication exposing a person to "hatred, contempt, ridicule, or obloquy, or which causes the person to be shunned or avoided, or which has a tendency to injure the person in the person's occupation." N.D.C.C. § 14-02-03. Slander is a false and unprivileged publication other than libel, which, in relevant part, "[t]ends directly to injure

6

the person in respect to the person's office, profession, trade, or business, either by imputing to the person general disqualifications in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to the person's office, profession, trade, or business that has a natural tendency to lessen its profits." N.D.C.C. § 14-02-04(3). A privileged communication includes "a communication, without malice, to a person interested therein by one who also is interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information." N.D.C.C. § 14-02-05(3). Communications are qualifiedly privileged under N.D.C.C. § 14-02-05(3). *Krile v. Lawyer*, 2022 ND 28, ¶ 18, 970 N.W.2d 150. If a qualified privilege is abused, it does not provide immunity from liability for defamation. *Id.*

[¶17] The defendants claim that any statements they made to law enforcement during the investigation of Kluver's criminal activity are qualifiedly privileged. In *Richmond v. Nodland*, 552 N.W.2d 586, 589 (N.D. 1996), we concluded that "defamatory statements voluntarily made to law enforcement during the investigation of criminal activity are qualifiedly privileged." Thus, we assume Bennett's statements to law enforcement that he believed Kluver stole approximately $5.38 million from EDS, Renewable, and SGJ were qualifiedly privileged.

[¶18] The plaintiffs argue that the defendants abused their qualified privilege and that the evidence shows the statements were made with actual malice to sustain the verdict. "A qualified privilege is abused 'if statements are made with actual malice, without reasonable grounds for believing them to be true, and on a subject matter irrelevant to the common interest or duty.'" *Richmond*, 552 N.W.2d at 589. Actual malice in this context "is not the same as the constitutional standard of actual malice that a plaintiff must prove when the person is a public figure bringing a defamation claim." *Krile*, 2022 ND 28, ¶ 22. The constitutional standard requires "knowledge that the statements are false or that the statements were made with reckless disregard for whether they were false." *Id.* "To defeat a qualified privilege under N.D.C.C. § 14-02-05(3), the plaintiff must prove actual malice by showing the statement was made

7

with malice in fact, ill will, or wrongful motive." *Id*. "[A]ctual malice is not inferred from the communication even if the statements are considered slander per se," and "it is the plaintiff's burden to prove actual malice." *Richmond*, at 590. Actual malice "may be shown by evidence of hostility, threats, improper motive, or an intent to causelessly and wantonly injure the plaintiff." *Krile*, at ¶ 21. Determining actual malice and abuse of qualified privilege are questions of fact, unless reasonable minds could not differ, in which case, the issues become questions of law. *Richmond*, at 590.

[¶19] Plaintiffs contend that Bennett's actions and statements to law enforcement and the North Dakota Industrial Commission show actual malice. They assert that after Kluver informed the Industrial Commission that Blue Appaloosa—a company owned by Olsen and managed by Bennett—was operating without a permit, the defendants made false statements about Kluver to law enforcement leading to Kluver's criminal charges.

[¶20] At trial, the district court received into evidence an Industrial Commission order finding Blue Appaloosa violated the law by commencing construction of a treating plant without a permit. *See also Blue Appaloosa, Inc. v. N.D. Indus. Comm'n*, 2022 ND 119, ¶¶ 14-15, 975 N.W.2d 578 (concluding the same). The order shows that Kluver contacted the Commission in April 2019, informing it of Blue Appaloosa's violation. In a June 2019 letter to the Commission, Bennett stated that Kluver "was misrepresenting facts, creating environmental issues and stealing oil." Bennett testified that in October 2019 he met with an agent at the Bureau of Criminal Investigation and told the agent that he believed Kluver stole $5.38 million from EDS, Renewable, and SGJ. Kluver testified that he was charged with theft and exploitation of an eligible adult in April 2020. The charges were ultimately dismissed against Kluver. Kluver testified the criminal charges led to reputational damage to himself and Little Knife. Kluver testified that Little Knife's 2020 sales were approximately $4,000,000 less than its 2019 sales, citing oil producers' unwillingness to do business with Little Knife as the primary reason for the decrease in sales.

[¶21] The jury as the finder of fact could infer that Bennett on behalf of the defendants made these statements with malice in fact, ill will, or wrongful

8

motive as retaliation for Kluver's informing the Industrial Commission of Blue Appaloosa's failure to obtain a permit or as a result of the defendants' and Kluver's deteriorating relationship. The defendants fail to cite to any evidence in the record that would undermine any such findings. We conclude the district court did not abuse its discretion in determining the jury's verdict finding the defendants defamed Kluver was not manifestly against the weight of the evidence and rejecting the defendants' new trial motion on this ground.

[¶22] The defendants also argue the jury was not lawfully instructed on qualified privilege or actual malice. They do not, however, assert they proposed an instruction on qualified privilege or actual malice. "A court may consider a plain error in the instructions affecting substantial rights that has not been preserved as required by Rule 51(d)." N.D.R.Civ.P. 51(d)(2). Although the defendants recite this rule in their reply brief, they do not argue the court's failure to provide an instruction on qualified immunity and actual malice rises to the level of plain error as supported by the law and facts. Because the defendants did not preserve this issue and do not argue on appeal it was plain error for the district court to exclude the instruction, we conclude this argument is waived.

C

[¶23] The defendants argue the judicially established facts in the jury instructions precluded the jury from finding they unlawfully interfered with the plaintiffs' business. The district court instructed the jury on the elements of unlawful interference with business: The existence of a valid business relationship or expectancy, knowledge by the defendant of the relationship or expectancy, the defendant interfered with the relationship or expectancy by committing an independently tortious or otherwise unlawful act, the interference was a proximate cause of the harm sustained, and the plaintiff was actually damaged. The defendants assert that because Kluver misrepresented the ownership of Little Knife, they had no knowledge of a business relationship or expectancy which did not belong to them and had no intent to interfere with that relationship or expectancy.

9

[¶24] The evidence shows that the defendants were aware of Little Knife's business relationship or expectancy with its customers, so much so that 3DP, EDS, and Renewable requested that Little Knife's customers deposit their payments into the bank account opened in Little Knife's name by Howell, which was transferred to an account owned by EDS. The jury could infer from this evidence that the defendants intended to interfere with Little Knife's business relationships or expectancies. Plaintiffs argue that although the jury instructions state that Kluver misrepresented the ownership of Little Knife to the defendants, that does not mean that he did so forever. We agree. The jury instructions state that Kluver, at some point, misrepresented Little Knife's ownership status and never informed Renewable that he was the sole owner. However, evidence in the record shows that Kluver notified Howell and Olsen by at least June 2017 that he was the sole owner of Little Knife. Thus, the jury could infer that although Kluver initially misrepresented Little Knife's ownership status, he eventually notified Howell and Olsen of its true status.

[¶25] The defendants contend the underlying tortious act could not have been defamation or deceit. We disagree. For the reasons stated in the previous section, the jury's verdict finding the defendants defamed Kluver is not manifestly against the weight of the evidence. Kluver testified that Little Knife's business relationships or expectancies were harmed as a result. The defendants argue that because the parties had a contractual relationship, the plaintiffs cannot assert both a breach of contract and a deceit claim, citing *Bakke v. Magi-Touch Carpet One Floor & Home, Inc.*, 2018 ND 273, ¶ 20, 920 N.W.2d 726. However, *Bakke* is clear that where a party alleges facts giving rise to deceit that are separate from the parties' contract, the deceit claim is not foreclosed. *Id.*; *see also Delzer v. United Bank of Bismarck*, 527 N.W.2d 650, 654 (N.D. 1995). The defendants have not identified what aspects of their contractual relationship overlap with, and foreclose, the plaintiffs' deceit claim. We conclude the district court did not abuse its discretion in determining the jury verdict finding the defendants tortiously interfered with the plaintiffs' business was not manifestly against the weight of the evidence and denying the new trial motion on this ground.

## IV

[¶26] The parties' remaining arguments are either unnecessary to our decision or without merit. The judgment and order denying the motion for a new trial are affirmed.

[¶27] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr