Corrected Opinion Filed 7/24/24 by Clerk of the Supreme Court

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

### 2024 ND 80

---

Lee Zander individually and as Executor of
the Estate of Taylor Goven, deceased; and
Lee Zander on behalf of the heirs and next
of kin of Taylor Goven, deceased; and
Jason Renschler, individually and as
Executor of the Estate of Abby Renschler,
deceased; and Jason Renschler and Sandra
Renschler on behalf of the heirs and next of
kin of Abby Renschler, deceased; and
Shayna Monson,                                          Plaintiffs and Appellees

     v.

Jordan Morsette,                                       Defendant and Appellant

---

### No. 20230103

---

Appeal from the District Court of Burleigh County, South Central Judicial
District, the Honorable Daniel J. Borgen, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Bahr, Justice.

Monte L. Rogneby (argued), Chad C. Nodland (appeared), Jeffrey S. Weikum
(appeared), and Thomas A. Dickson (on brief), Bismarck, ND, for plaintiffs and
appellees.

Kay N. Hunt (argued), Minneapolis, MN, and Michael J. Morley (appeared),
Grand Forks, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]   Jordan Morsette appeals from a judgment entered after a jury awarded a total of $175 million of noneconomic damages to Shayna Monson; Lee Zander, individually and on behalf of Taylor Goven, deceased; and Jason and Sandra Renschler, individually and on behalf of Abby Renschler, deceased ("Plaintiffs"), and from an order denying his motion for new trial. Morsette argues he is entitled to a new trial because Plaintiffs improperly referred to alcohol at the trial on remand, despite this Court's prior ruling that evidence relating to his intoxication is not admissible; because the damages award is excessive; and because the jury improperly speculated as to the damages. We reverse and remand for further proceedings consistent with this opinion.

I

[¶2]   In June 2015, while driving on the wrong side of the road, Morsette's vehicle collided head on with Monson's vehicle on the Bismarck Expressway. Monson suffered serious bodily injuries; Goven and Renschler died at the crash scene. Plaintiffs subsequently brought this automobile negligence action against Morsette. Morsette answered and admitted liability for the collision. The district court held a jury trial in 2019 to decide the amount of Plaintiffs' compensatory damages. The jury subsequently awarded Plaintiffs, collectively, $242 million in noneconomic compensatory damages and $895 million in punitive damages.

[¶3]   After the jury's verdict in Plaintiffs' favor awarding compensatory damages and punitive damages, Morsette appealed. *Zander v. Morsette*, 2021 ND 84, 959 N.W.2d 838. In *Zander*, this Court reversed and remanded, holding the district court erred in admitting evidence of Morsette's intoxication when liability was admitted, erred in failing to instruct the jury it could not award compensatory damages to punish Morsette, and erred in allowing a claim for punitive damages. *Id.* at ¶¶ 17, 26, 33. We reversed and remanded for a new trial on Plaintiffs' compensatory damages. *Id.* at ¶ 34.

1

[¶4]   On remand, the district court held another jury trial. The sole issue at trial was Plaintiffs' noneconomic damages. The jury returned a verdict awarding a total of $175 million in noneconomic damages. Specifically, the jury awarded Plaintiff Shayna Monson $10,000,000 in past noneconomic damages and $65,000,000 in future noneconomic damages, and awarded to each of the Goven and Renschler Plaintiffs $10,000,000 in past noneconomic damages and $40,000,000 in future noneconomic damages. The court entered a judgment.

[¶5]   Morsette moved for a new trial, which Plaintiffs opposed. The district court denied his motion.

## II

[¶6]   Morsette moved the district court for a new trial under N.D.R.Civ.P. 59(b)(1), (3), (5), (6), and (7), arguing a new trial was required because there were improper references to alcohol at the trial on remand, the jury was asked to speculate on damages, and the jury awarded excessive damages. Rule 59(b), N.D.R.Civ.P., allows the court to grant a new trial on grounds "materially affecting" the moving party's "substantial rights":

> The court may, on motion of an aggrieved party, vacate the former verdict or decision and grant a new trial on any of the following grounds materially affecting the substantial rights of the party:
> > (1) irregularity in the proceedings of the court, jury, or adverse party, or any court order or abuse of discretion that prevented a party from having a fair trial;
> >     . . . .
> > (3) accident or surprise that ordinary prudence could not have guarded against;
> >     . . . .
> > (5) excessive damages appearing to have been awarded under the influence of passion or prejudice, but when a new trial is requested on this ground and it appears that the passion or prejudice affected only the amount of damages awarded and did not influence the jury's findings on other issues in the case, the district court, on hearing the motion, and the supreme court, on appeal, may order a reduction of the verdict instead of a new trial or order that a new trial be had unless the prevailing party remits the excess damages;

2

(6) insufficient evidence to justify the verdict or other decision, or that the verdict is against the law;
(7) errors in law occurring at trial and, when required, objected to by the moving party; . . . .

[¶7]   We review the district court's decision on a new trial motion under the abuse of discretion standard. *Zander*, 2021 ND 84, ¶ 7; *Rentz v. BNSF Ry. Co.*, 2020 ND 254, ¶ 12, 952 N.W.2d 47. A court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Zander,* at ¶ 7.

### III

[¶8]   Morsette argues he is entitled to a new trial because Plaintiffs improperly referred to alcohol during the trial on remand despite this Court's ruling that alcohol was not relevant.

[¶9]   In *Zander*, 2021 ND 84, ¶ 17, this Court held evidence of Morsette's intoxication was not relevant under N.D.R.Ev. 402. We therefore concluded the district court abused its discretion in admitting evidence of Morsette's intoxication because Plaintiffs are precluded from recovering damages resulting from his intoxication. *Zander*, at ¶ 17. In reversing and remanding for a new trial on compensatory damages, we held the court's "admission of the irrelevant evidence of Morsette's intoxication and the failure to instruct the jury they could not award punitive damages in the compensatory damages phase of trial were prejudicial errors that affected Morsette's substantial rights." *Id.* at ¶ 26. Based on our review of the entire record, we could not conclude the court's errors were harmless. *Id.*

[¶10] Morsette again contends he is entitled to a new trial because, despite this Court's prior holding evidence relating to his intoxication is not admissible, a Highway Patrol officer volunteered in his testimony information about alcohol use and one of Plaintiffs' counsel referred to alcohol during closing argument.

3

[¶11] During the second day of the trial on remand, a Highway Patrol officer testified:

> Q:    How are you doing?
> A:    Well, this is an interesting crash because most everybody that was out at the scene has daughters or children of their own, and we teach our kids to do exactly what they did. The individuals that died in this crash had been drinking and none of them were driving. The individual that was driving—
> Q:    No. No. Thank you.
> MR. MORLEY:    Your Honor, I object to the reference. Move to strike.
> MR. DICKSON:    I understand.
> THE COURT:    Granted. Yes, that sustained.
> MR. DICKSON:    I would withdraw the question, too, Your Honor.

Outside of the jury's presence, Morsette's counsel moved for a mistrial arguing the officer's testimony, whether inadvertent or not, was prejudicial. The district court denied the motion for mistrial.

[¶12] Additionally, during Plaintiffs' closing arguments, one of Plaintiffs' counsel provided the following "example" to illustrate probable cause, specifically relating to drunk driving:

> We have four burdens of proof in North Dakota. The lowest burden is probable cause. If you're driving home Saturday night, you cross the center line, you smell of alcohol, that's enough evidence to get you arrested.

Morsette's counsel immediately objected, stating the following grounds, "Well, prior rulings of the Court and no evidence. The Court has ruled. We object." After a bench conference, not recorded in the transcript, Plaintiffs' counsel resumed his closing argument regarding the probable cause burden of proof but omitted any reference to alcohol.

[¶13] After the district court submitted the case to the jury and the jury retired for deliberation, Morsette's counsel renewed his objection to the closing argument and again moved the court for a mistrial, arguing Plaintiffs' counsel "deliberately violated the remand order of the North Dakota Supreme Court

4

that alcohol is not to be in evidence or a part of this case. And this Court also ruled at pretrial that alcohol was not to be considered in this case for anything." The court again denied Morsette's motion for mistrial, stating:

> I understand the argument . . . but there was no evidence at all presented to the jury that your client had any alcohol in his system at all when this accident occurred. We followed that order from the Supreme Court.
> That probable cause burden of crossing the line for an officer to stop someone is pretty standard. It's the most common reason for anyone to be stopped in North Dakota. It's the one most people can relate to.
> I don't believe that [Plaintiffs' counsel] would intentionally sabotage his own case, because if that were an intentional act and the Court would rule that way, he knows that the sanction on that would be severe, and I don't believe for a second he would do that in this case. So I'm going to deny the motion.

[¶14] In denying Morsette's motion for new trial, the district court held the references to alcohol did not require a new trial. The court found no evidence showed the jury made impermissible inferences regarding Morsette's intoxication or took references of alcohol into consideration when awarding damages. The court explained it sustained Morsette's objection and granted his motion to strike the Highway Patrol officer's volunteered statement, the jury was not permitted to consider the officer's answer, and nothing in the officer's answer linked alcohol to Morsette. The court found no factual basis to presume the jury's damages award was based in part on Morsette's alcohol consumption the night of the crash.

[¶15] We do not find support in the record for the district court's conclusion the jury was not permitted to consider the Highway Patrol officer's answer. Although the court granted Morsette's motion to strike, it never instructed the jury not to consider the officer's answer. However, the rest of the court's analysis supports its denial of Morsette's motion for new trial. Although the officer's volunteered testimony referenced alcohol, the officer did not testify Morsette was drinking; he said "[t]he individuals that died in this crash had been drinking and none of them were driving." Plaintiffs' counsel stopped the

officer's testimony when the officer said, "The individual that was driving—" It is unknown whether the driver about whom the officer was going to testify was Monson or Morsette. What the record shows is Plaintiffs' counsel stopped the nonresponsive testimony, the court sustained Morsette's objection, and the officer never testified Morsette had consumed alcohol or was intoxicated.

[¶16] In *Zander*, we held evidence of Morsette's intoxication was irrelevant to Plaintiffs' damages because Morsette admitted liability. 2021 ND 84, ¶ 17. The district court did not permit, and the parties did not introduce, evidence of Morsette's intoxication during the trial on remand. Although the Highway Patrol officer referenced alcohol, the court sustained Morsette's objection. The court correctly noted "there was no evidence at all presented to the jury that [Morsette] had any alcohol in his system at all when this accident occurred." The court, which presided over the trial and heard all of the evidence, determined the officer's volunteered answer probably did not affect the outcome of the case. The court's decision not to grant a new trial due to the officer's testimony was not arbitrary, unconscionable, or unreasonable. The court also did not misinterpret or misapply the law. Rather, the court's decision was the product of a rational mental process leading to a reasoned determination. Based on this record, we conclude the court did not abuse its discretion by denying the motion for new trial due to the officer's testimony.

[¶17] Plaintiffs' counsel's probable cause "example" during closing argument was not testimony and did not state Morsette was drinking. Although the bench conference where the district court addressed Morsette's objection was not recorded, after the bench conference Plaintiffs' counsel resumed his closing argument and did not reference alcohol.

[¶18] In *Krueger v. Grand Forks County*, this Court discussed the district court's discretion in controlling closing arguments:

> "The scope and substance of opening and closing arguments are subject to control by the district court, and we will not reverse a district court's decision absent an abuse of discretion." *City of Bismarck v. Mariner Constr., Inc.*, 2006 ND 108, ¶ 25, 714 N.W.2d 484. An attorney must refrain from making potentially prejudicial

statements or remarks during closing argument. *Blessum v. Shelver*, 1997 ND 152, ¶ 32, 567 N.W.2d 844. However, counsel generally must make a timely objection to an improper argument and *request the court give a curative instruction to the jury*. *Id.* at ¶ 30. The failure to object waives the improper argument, except "'when the misconduct of counsel is so severe that it affects that party's substantial rights or constitutes a denial of a fair trial, thereby placing an independent duty upon the court to confine the attorney to the permissible bounds of argument, where necessary, and admonish the jury.'" *Id.* (quoting *Andrews v. O'Hearn*, 387 N.W.2d 716, 731 (N.D. 1986)).

2014 ND 170, ¶ 41, 852 N.W.2d 354 (emphasis added). We have further explained "a judge's curative or cautionary instructions are presumed to be followed by a jury and may remedy errors that are not incurably prejudicial." *Kilber v. Grand Forks Pub. Sch. Dist.*, 2012 ND 157, ¶ 24, 820 N.W.2d 96 (citing *State v. Gibbs*, 2009 ND 44, ¶ 21, 763 N.W.2d 430; *State v. Trout*, 2008 ND 200, ¶ 11, 757 N.W.2d 556 ("issuance of a curative instruction to disregard certain evidence is generally sufficient to remove the threat of prejudice")).

[¶19] While Morsette made a timely objection to Plaintiffs' counsel's reference to alcohol and moved for a mistrial, he did not request the district court give a curative instruction to the jury. However, the court instructed the jury that the lawyers' arguments are not to be considered evidence. Generally, a party is not prejudiced by a counsel's improper arguments when the court instructs the jury not to consider counsel's comments as evidence. *Blessum v. Shelver*, 1997 ND 152, ¶ 35, 567 N.W.2d 844 (citing *Holte v. Carl Albers, Inc.*, 370 N.W.2d 520, 526-27 (N.D. 1985)) (no prejudice from improper arguments when jury instructed not to consider comments by counsel as evidence). We presume the jury followed the judge's instructions. *See State v. Linner*, 2023 ND 57, ¶ 19, 988 N.W.2d 586; *Blessum*, at ¶ 35.

[¶20] The district court, after considering the nature of Plaintiffs' counsel's statement in closing argument in the context of the entire trial, and the court's instructions to the jury, concluded the statement probably did not affect the outcome of the case. The court's decision not to grant a new trial due to counsel's comment was not arbitrary, unconscionable, or unreasonable. The

7

court also did not misinterpret or misapply the law. Rather, the court's decision was the product of a rational mental process leading to a reasoned determination. Based on this record, we conclude the court did not abuse its discretion by denying the motion for new trial due to Plaintiffs' counsel's reference to alcohol in closing argument.

[¶21] We conclude the district court's decision that the limited references to alcohol did not violate Morsette's substantial rights or constitute a denial of a fair trial was not a misapplication of the law and was a reasoned determination. We therefore conclude the court did not abuse its discretion in denying Morsette a new trial based on the identified references to alcohol during the trial on remand.

IV

[¶22] Morsette argues he is entitled to a new trial because the noneconomic damages award is excessive and the jury improperly speculated on the damages.

[¶23] "Damages in all cases must be reasonable[.]" N.D.C.C. § 32-03-37. "The purpose of compensatory damages is to compensate a plaintiff for his or her injuries, not to punish the defendant for his or her wrongdoing." *Zander*, 2021 ND 84, ¶ 25. "The determination of damages for pain, suffering, and mental anguish is not 'susceptible of arithmetical calculation,' but is largely dependent upon the 'common knowledge, good sense and practical judgment of the jury.'" *Slaubaugh v. Slaubaugh*, 466 N.W.2d 573, 577 (N.D. 1991) (quoting *Stoner v. Nash Finch, Inc.*, 446 N.W.2d 747, 753 (N.D. 1989)).

[¶24] Under N.D.R.Civ.P. 59(b)(5), the court may grant a new trial on grounds the jury awarded "excessive damages appearing to have been awarded under the influence of passion or prejudice." To justify the granting of a new trial, passion and prejudice "usually connote anger, resentment, hate, and disregard of the rights of others." *N.B. v. Terwilliger*, 2021 ND 74, ¶ 28, 958 N.W.2d 487 (quoting *Roberts v. Hail Unlimited*, 358 N.W.2d 776, 781 (N.D. 1984)). "In determining on appeal whether [a] verdict was motivated by passion or prejudice, 'passion' means moved by feelings or emotions, or may include

8

sympathy as moving influence without conscious violation of duty, 'prejudice' includes forming an opinion without due knowledge or examination." *Jalbert v. Eagle Rigid Spans, Inc.*, 2017 ND 50, ¶ 16, 891 N.W.2d 135 (quoting *Stoner*, 446 N.W.2d at 754).

[¶25] This Court previously outlined the standard for challenges under N.D.R.Civ.P. 59(b)(5):

> Where the motion is based upon an excessive verdict influenced by passion or prejudice, the standard for what constitutes an excessive verdict varies but generally includes one or more of the following: [1] the amount is so unreasonable and extreme as to indicate passion or prejudice on the part of the jury, . . . [2] the award is so excessive as to be without support in the evidence, . . . [3] the jury verdict is so excessive as to appear clearly arbitrary, unjust, or such as to shock the judicial conscience.

*Smith v. Anderson*, 451 N.W.2d 108, 112 (N.D. 1990) (quoting *Cook v. Stenslie*, 251 N.W.2d 393, 396 (N.D. 1977)).

[¶26] "It is presumed that a damage verdict is proper[.]" *Blessum*, 1997 ND 152, ¶ 37. Yet, a jury does not have "absolute, unfettered discretion in setting damages for pain, suffering, mental anguish, and similar injuries." *Slaubaugh*, 466 N.W.2d at 577. "The jury is bound by the evidence in awarding damages, just as it is bound by the law." *Bentley v. Bunton*, 94 S.W.3d 561, 606 (Tex. 2002). As our standards suggest, there is "an allowable range within which the jury is free to assess damages as it sees fit." *Slaubaugh*, at 577. However, the deference afforded a jury's discretionary award of noneconomic damages does not insulate the award from appellate review for evidentiary support. The jury's exercise of "sound discretion" in awarding noneconomic damages necessarily includes that the award be supported by the evidence. *See Barta v. Hinds*, 1998 ND 104, ¶ 9, 578 N.W.2d 553 (stating jury's determination of noneconomic damages rests within its "sound discretion"); *see also Bentley*, at 606 ("Juries cannot simply pick a number and put it in the blank."). "'[A]wards for pain and suffering are highly subjective,' and '[d]epending upon the fact situation, the range between an inadequate award for pain and suffering and an excessive award can be enormous.'" *Gonzalez v. U.S.*, 681 F.3d 949, 953 (8th

Cir. 2012) (citations omitted). Generally, trial and appellate judges must affirm awards of noneconomic damages unless the award falls outside the range of an inadequate award and an excessive award.

[¶27] Although a court may consider verdicts in other cases when considering a motion under N.D.R.Civ.P. 59(b)(5), the evaluation of whether a verdict is excessive is ultimately grounded in the evidence in the trial record. In *Cook*, 251 N.W.2d at 398, this Court explained:

> This court has not expressly held, as some courts have, that reference to or comparison to verdict sizes in other cases is not permitted when determining whether a verdict is excessive. In fact, in *Holten v. Amsden*, 161 N.W.2d 478 (N.D. 1968), we did just that by examining the amounts awarded in several other cases before concluding that the verdict was not so excessive as to indicate passion or prejudice. As a practical matter, we are certain that such comparison tacitly takes place, for how else could a verdict "shock the judicial conscience" except in relation to the court's own experience with verdicts in other similar cases? The courts do not operate in a vacuum. *Such comparisons, however, are never conclusive. We adhere firmly to the view that each case must be evaluated on its own particular facts and circumstances.*

(Emphasis added.) Commenting on the use of "jury-verdict publications," in *Miller v. Breidenbach*, 520 N.W.2d 869, 874-75 (N.D. 1994), this Court emphasized the analysis under a Rule 59(b)(5) motion must be based on the evidence in the trial record:

> Whatever practical guidance negotiating attorneys may find in jury-verdict publications, those reports do not appropriately measure the potential excessiveness of a particular verdict like this one. *Whether a verdict is excessive does not depend on any outside measurement, but rather upon the quality of the evidence in the trial record.*

(Emphasis added.) The Eighth Circuit Court of Appeals observed "that 'comparisons to other jury verdicts are often not particularly helpful in claims involving noneconomic damages,' and that a district court may even abuse its discretion by relying on such comparisons where the facts of the instant case

'are not easily comparable to the facts of other cases.'" *Gonzalez*, 681 F.3d at 953 (quoting *McCabe v. Parker,* 608 F.3d 1068, 1080 (8th Cir. 2010)).

[¶28] In denying Morsette's new trial motion, the district court discussed the law and jury instructions and concluded sufficient evidence was presented at trial to justify the jury's award of damages. The court specifically stated:

> As the above jury instructions demonstrate, the Court has exercised supervision over the jury's award of damages by instructing the jury on what it may consider, what it cannot consider, and providing definitions where appropriate. The jury heard all the relevant facts and admissible evidence, exercised its discretion, and returned a verdict awarding the Plaintiffs non-economic damages. The total damages, although a large number, are not excessive based on the evidence presented to the jury and the wide discretion juries are given in determining the amount of damages. North Dakota law presumes, in wrongful death actions, there will be "substantial damages." *Hopkins v. McBane*, 427 N.W.2d 85, 94 (N.D. 1988). "The amount to be awarded must necessarily be left, therefore, to the sound discretion, good sense and practical judgment of the jury." *Grenz v. Werre*, 129 N.W.2d 681, 691 (N.D. 1964).

Other than these general statements, the court conducted no meaningful analysis of the "relevant facts and admissible evidence" supporting the "large" amount of noneconomic damages.

[¶29] Morsette argues he is entitled to a new trial because the jury's "clearly excessive" verdict is shocking to the conscience and out of proportion with other damage awards. He argues Monson's counsel improperly invited the jury to consider economic damages when she had only brought a claim for noneconomic damages; the jury improperly speculated as to Plaintiffs' noneconomic damages; and the jury showed it was confused during its deliberations when it asked the district court, "What is the amount claimed by the [P]laintiffs?" Morsette contends Plaintiffs' "suggested amounts" at trial were completely arbitrary and only added to the jury's speculation by stating their requests were a "floor." Morsette argues the verdict is contrary to law

11

because the jury recognized it had no knowledge on which to base the damages award and could not identify what amount Plaintiffs were requesting.

[¶30] Plaintiffs respond that no trial errors caused jury passion or prejudice affecting the verdict and the evidence presented at trial, as the district court found, established Plaintiffs' damages. They contend Morsette invites this Court to compare the verdict in this case to verdicts in other cases, rather than deciding this case based on this case's facts and circumstances. Plaintiffs argue comparative-verdict analyses are marginally relevant and should not be treated as conclusive since the jury was not limited by previous decisions of other juries in other jurisdictions and, further, Morsette improperly urges this Court to abandon the abuse of discretion standard in favor of a de novo review.

[¶31] The New Mexico Supreme Court recently acknowledged "the inherently difficult task of assigning monetary value to nonmonetary losses[.]" *Morga v. FedEx Ground Package Sys., Inc.*, 512 P.3d 774, 783 (N.M. 2022). It explained, "The valuation of noneconomic damages is an 'inexact undertaking at best,' and 'there can be no standard fixed by law for measuring the value of [noneconomic damages].'" *Id.* (quoting *Sandoval v. Chrysler Corp.*, 1998-NMCA-085, ¶ 13, 125 N.M. 292, 960 P.2d 834).

[¶32] It is indeed difficult to place a monetary value on pain, trauma, mental anguish, emotional distress, physical impairment, disfigurement, discomfort, inconvenience, humiliation, impairment of quality of life, or other nonpecuniary damages that may come from a life changing injury. It is equally difficult to place a monetary value on injuries resulting from the loss of a loved one. However, despite the difficulty in assigning a monetary value for noneconomic damages, noneconomic damages must be grounded in something.

[¶33] Courts have struggled to define the standard to review excessive damage claims. *See, e.g., Gregory v. Chohan*, 670 S.W.3d 546 (Tex. 2023) (compare plurality opinion to concurring opinions); *Morga*, 512 P.3d at 783; *see also* Aaron Sharratt, *The Outer Limits: Jury Discretion, District Court Deference, & Excessive Damages in Morga v. Fedex Ground Package Sys., Inc.*, 53 N.M. L. Rev. 521, 521-22 (2023) ("With the decision, the court ventured into the

12

controversial arena of noneconomic compensatory damage calculations in wrongful death actions."); Lawrence James Madigan, *Excessive Damage Review in the Fifth Circuit: The Conflict and Quagmire Continue*, 45 Tex. Tech L. Rev. 453 (2013); Lawrence James Madigan, *Excessive Damage Review in the Fifth Circuit: A Quagmire of Inconsistency*, 34 Tex. Tech L. Rev. 429 (2003).

[¶34] In the present case, the parties do not suggest, or request this Court adopt, a new standard for determining whether an award is excessive. Thus, we apply our longstanding standard of considering whether "the amount is so unreasonable and extreme as to indicate passion or prejudice on the part of the jury," "the award is so excessive as to be without support in the evidence," or "the jury verdict is so excessive as to appear clearly arbitrary, unjust, or such as to shock the judicial conscience." *Smith*, 451 N.W.2d at 112 (quoting *Cook*, 251 N.W.2d at 396). Although courts may consider outside measurements, whether a verdict is excessive depends on an analysis of the quality of the evidence in the trial record. *See Miller*, 520 N.W.2d at 874-75; *Cook*, 251 N.W.2d at 398.

[¶35] Here, the district court did not conduct an analysis on whether the relevant evidence presented at trial supports the jury's total $175 million verdict for noneconomic damages. In other contexts, this Court has said the district court must sufficiently explain its decision in exercising its discretion to permit meaningful appellate review. *See Rocky Mountain Steel Founds., Inc. v. Brockett Co., LLC*, 2019 ND 252, ¶¶ 29-30, 934 N.W.2d 531; *State ex rel. Schlect v. Wolff*, 2010 ND 101, ¶ 13, 783 N.W.2d 642. While the court is not required to state findings and conclusions, *see* N.D.R.Civ.P. 52(3) ("[t]he court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion"), the court must provide some explanation of the supporting evidence in denying Morsette's motion for new trial based on an assertion of excessive damages. We conclude the court abused its discretion when it denied the motion for new trial without analyzing and identifying any evidence in the record supporting the award of noneconomic damages, *i.e.*, the evidence showing a rational connection between the injuries suffered and the dollar amount awarded.

[¶36] Furthermore, based on the record, viewing the evidence in the light most favorable to the verdict, we conclude the district court abused its discretion when it denied the motion for new trial because the evidence in the record does not support the amount of noneconomic damages awarded. Both parties point this Court to jury verdicts from other states. The cited cases do not meaningfully compare to the evidence presented in this case. More importantly, comparisons are not conclusive; this case must be evaluated on its own particular facts, based on the quality of the evidence in the trial record. Plaintiffs have not meaningfully identified evidence in the record supporting the $175 million award of noneconomic damages.

[¶37] Section 32-03.2-04, N.D.C.C., provides for an award of noneconomic damages for wrongful death or injury to a person, stating in part:

> In any civil action for damages for wrongful death or injury to a person and whether arising out of breach of contract or tort, damages may be awarded by the trier of fact as follows:
>     . . . .
> 2. Compensation for noneconomic damages, which are damages arising from pain, suffering, inconvenience, physical impairment, disfigurement, mental anguish, emotional distress, fear of injury, loss or illness, loss of society and companionship, loss of consortium, injury to reputation, humiliation, and other nonpecuniary damage.

[¶38] The district court instructed the jury Morsette admitted responsibility and it should be "uninfluenced by the defendant's admission" in deciding damages. The court's instructions defined "damages," and regarding "adequate compensation," the court instructed:

> Damages, if allowed, should be adequate fairly to compensate the plaintiffs for all the detriment suffered. The measure of damages is the amount that will compensate for all detriment caused by the negligent act or omission, whether or not it could have been anticipated. *Damages in all cases must be reasonable, but may not be greater than the amount claimed by the plaintiffs.*

14

(Emphasis added.) The court instructed the jury it was not permitted to award speculative damages nor base its award on conjecture. The court instructed the jury it could consider any of the items of damage in N.D.C.C. § 32-03.2-04(2) to arrive at its award for the wrongful death and personal injury claims, and compensation for noneconomic damages "is measured by the reasonableness of the award in the light of all the circumstances of the case."

A

[¶39] Shayna Monson suffered serious bodily injuries in the collision. The jury awarded Plaintiff Shayna Monson $10,000,000 in past noneconomic damages and $65,000,000 in future noneconomic damages, for a total noneconomic damage award of $75 million.

[¶40] Monson, her mother, and her father testified at trial. Monson was 28 years old at trial, with the life expectancy of an individual that age of 54.17 years. Before the crash, she had been attending college, with 14 credits left to graduate; was enrolled in a class preparing for the MCAT exam; and hoped to be an anesthesiologist. She survived the collision but suffered a brain injury, was initially unable to communicate, and needed to relearn everything.

[¶41] Monson eventually returned to college and graduated. While finishing her classes, she lived in a one-bedroom apartment by herself with the help of others. Since graduation, she has been living at home with her mother. She has been looking for a job but has not found one. Monson's mother testified that she has been pushing hard for Monson to find a job to become independent because she fears who will take care of her when her parents are not around.

[¶42] Monson testified she cannot do "a whole bunch of things that [she] could do before." She explained she had to relearn everything, such as walking and talking; she cannot exercise much but can walk; and she wants to drive again but she does not know if she will be able to do so. Testimony at trial described Monson as being more reserved and having no social life. Although she can speak, she slurs her words when tired. Some people who do not regularly interact with her have difficulty understanding her.

15

## B

[¶43] Taylor Goven and Abby Renschler died at the scene. The jury awarded each of the Goven and Renschler Plaintiffs $10,000,000 in past noneconomic damages and $40,000,000 in future noneconomic damages, for a total noneconomic damage of $100 million.

### 1

[¶44] Taylor Goven's mother, father, and stepfather testified at trial on their damages claim. Taylor Goven was 21 years at the time of her death, with a life expectancy of an individual that age of 60.95 years. Her mother was about 50 years old at the time of trial and is married to Taylor's stepfather, who was 49 years old. The life expectancy of an individual 49 years of age is 33.37 years. They have two minor children. Taylor Goven's father was 51 years old and has three minor children with his wife.

[¶45] Taylor Goven had completed her third year of college and was home for the summer, interning with her father's engineering firm. She lived in an apartment in Grand Forks during the school year. She had still been deciding what to do after graduation and had talked about getting an engineering job, but probably not in North Dakota. She had been making plans with her boyfriend about where they would be going.

[¶46] Taylor's mother testified the death affects her sleep because she thinks about it a lot and dreams about it. Her mother testified her relationship with her husband had been affected "a little bit," but they were working through that. She testified it had affected her relationship with her other children and she had become more protective of them. She testified Taylor's death affected her social life and she is seeing a therapist once a month. Taylor's father testified about his close relationship with Taylor and that he attended counseling after her death. He testified his sleep is not affected, but his days are affected, and his parenting style changed in that he is more proactive telling his children to be careful and setting harder curfews.

[¶47] Taylor's stepfather testified her death had impacted his relationship with his wife "a little bit" and testified on the impact on their children. He testified it probably made him "a better dad." Her stepfather had not received counseling. Regarding the effect on one sibling, he testified the sibling misses Taylor when he is doing his math because she used to help him with math. He testified, "[M]aybe that's why the kid is a straight-A student now."

2

[¶48] Abby Renschler's father and mother testified at trial on their damages claim. Abby Renschler was 22 years old at the time of her death, with a life expectancy of an individual that age of 59.98 years. Her father and mother were 52 years old at the time of trial, with life expectancies of 28.18 years and 31.71 years, respectively. She had two siblings, aged 24 and 22 at the time of trial.

[¶49] Abby Renschler had a college degree and was employed full-time at the time of her death. Her mother testified Abby was close to her two younger siblings. Her father described Abby as the leader, and an ideal older sister and a quasi-parent to her siblings when Abby's father and mother were getting started in their careers. He testified that if the younger siblings needed advice, Abby was there to do that; now they do not have such a source. Abby's siblings did not testify.

[¶50] Her mother testified she thinks about Abby every day. She testified she sees a therapist which helps "for a while." Regarding the effect of Abby's death and her marriage, she testified, "It's hard. Tense at times. We can talk about her together." Abby's father testified that he misses Abby every day. There was no evidence presented he had attended therapy as a result of her death.

C

[¶51] Based on the evidence in this case, and considering the cited references to verdicts in other cases, we conclude the award of $175 million in noneconomic damages is not supported by the evidence and "shocks" the judicial conscience. *See Terwilliger*, 2021 ND 74, ¶ 25 (affirming award of past

non-economic damages that "was not perverse or clearly contrary to the evidence"); *Condon v. St. Alexius Med. Ctr.*, 2019 ND 113, ¶ 31, 926 N.W.2d 136 ("While the verdict is large, the damages are within the range of the evidence the jury heard at trial. The damages are also reasonable considering the testimony evidencing the devastating effect the injury had on [plaintiff's] life."); *Miller*, 520 N.W.2d at 875 ("The verdict is not excessive. The evidence, as a whole, supports the verdict."); *Slaubaugh*, 466 N.W.2d at 577 (reversing jury award that "falls outside the boundaries of the acceptable range supported by the evidence"); *Stoner*, 446 N.W.2d at 754 (concluding "the jury's award of compensatory damages is supported by the evidence and is not excessive"). Because the jury's unprecedented large noneconomic damage award is not supported by the record, it also appears to be the product of "passion and prejudice." *See Slaubaugh*, 466 N.W.2d at 578 (explaining when the jury renders a verdict that is without support in the evidence, "there is a strong inference that the jury has been influenced by passion, prejudice, or other outside forces").

[¶52] Morsette argues a new trial should be granted because the jury was improperly speculating as to the damages. As discussed, the district court instructed the jury stating, "Damages in all cases must be reasonable, but may not be greater than the amount claimed by the plaintiffs." Generally, "[u]nopposed jury instructions become the law of the case." *Kluver v. SGJ Holdings, LLC*, 2023 ND 65, ¶ 12, 988 N.W.2d 569 (quoting *Twete v. Mullin*, 2019 ND 184, ¶ 21, 931 N.W.2d 198). During its deliberations, the jury submitted a question to the court for an explanation of "adequate compensation," stating: "On page 13 [of the jury instructions] entitled adequate compensation, the last sentence says damages in cases must be reasonable but may not be greater than the amount claimed by the plaintiffs. What is the amount claimed by the plaintiffs?" The court responded to the jury that "[p]resentation of evidence is closed" and the jury would have to rely on its "joint recollection of the evidence presented in court" in reaching its verdict.

[¶53] The jury's question illustrates its confusion regarding the "amount claimed" by Plaintiffs as damages. During closing arguments, Plaintiffs' counsel identified various damage amounts, stated the requests were a "floor"

18

or a "minimum," and suggested the jury had the power to "double" or "triple" that amount if the jury believed the evidence proved that as being "reasonable and fair." However, as also discussed, the district court instructed the jury that lawyers' arguments are not to be considered evidence:

> The arguments of the lawyers are not evidence; they are useful to you only to assist you in arriving at the true facts in the case. If the lawyers made statements or expressed opinions to you not borne out by the evidence in the case, you will disregard any and all such statements and opinions of counsel and be guided solely by the whole evidence in this case, under these instructions, in arriving at your verdict.

[¶54] Morsette argues Plaintiffs' suggested amounts were completely arbitrary and Plaintiffs added to the speculation by stating the requests were a "floor," leading to an excessive verdict in this case. As he contends, "[b]ecause the jury recognized it had no new knowledge on which to base the award of damages and could not even identify what Plaintiffs were requesting, the verdict is contrary to law."

[¶55] The jury was instructed it may not award damages greater than the "amount claimed" by the Plaintiffs. The jury expressed confusion on the "amount claimed" by the Plaintiffs. We conclude the jury's confusion on the amount claimed by Plaintiffs resulted in the improper speculation by the jury and in an award contrary to the district court's instruction.

[¶56] When a jury awards excessive damages, under appropriate circumstances, the district court and this Court on appeal, "may order a reduction of the verdict instead of a new trial or order that a new trial be had unless the prevailing party remits the excess damages." N.D.R.Civ.P. 59(b)(5); *see also Condon*, 2019 ND 113, ¶ 32. Although a court "'may' order a reduction of the verdict or condition the grant of a new trial upon a refusal to remit excess damages, [Rule 59(b)(5)] does not require the court to choose either alternative over granting a new trial without condition." *Jim's Hot Shot Serv., Inc. v. Cont'l W. Ins. Co.*, 353 N.W.2d 279, 283 (N.D. 1984). We decline to order "a reduction of the verdict instead of a new trial or order that a new trial be had unless the prevailing party remits the excess damages." However, on remand, after a

hearing and based on appropriate findings, the district court may, but is not required to, determine the amount of noneconomic damages the jury could have reasonably awarded each Plaintiff based on the evidence in the record, and order a new trial unless the Plaintiff accepts the remitted amount. If a Plaintiff does not accept the remitted amount, the court must conduct a new trial on that Plaintiff's compensatory damages.

[¶57] On this record, we conclude the district court abused its discretion by not providing an explanation of the evidence supporting the jury's award of noneconomic damages, and by concluding the damages award was not excessive. Therefore, we reverse the judgment and the court's order denying Morsette's motion for new trial.

## V

[¶58] We reverse the judgment and order denying Morsette's motion for new trial, and remand the case to the district court for further proceedings consistent with our opinion. We have considered the parties' remaining arguments and conclude they are either unnecessary to our decision or are without merit.

[¶59] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr